```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3

    UNITED STATES OF AMERICA,
 4                                     Criminal Action
              Plaintiff,              No. 1:21-cr-317-1
 5
         vs.                          Washington, DC
 6                                     August 10, 2022
    BENJAMIN LAROCCA, et al.,
 7                                     12:38 p.m.
              Defendants.
 8   _____/

 9

                    TRANSCRIPT OF SENTENCING
10          BEFORE THE HONORABLE TANYA S. CHUTKAN
                 UNITED STATES DISTRICT JUDGE
11

12

    APPEARANCES:
13

    For the Government:    KATHRYN FIFIELD
14                          USAO-DC
                            555 Fourth Street, NW
15                          Washington, DC 20530

16

    For the Defendant:     BRET LEE
17                          Bret Lee Legal Solutions
                            10521 Judicial Drive, Suite 100
18                          Fairfax, VA 22030

19

20

21

22

    Court Reporter:        JEFF M. HOOK
23                          Official Court Reporter
                            U.S. District & Bankruptcy Courts
24                          333 Constitution Avenue, NW
                            Room 4700-C
25                          Washington, DC 20001
```

1

# I N D E X

2

3 <u>EXHIBIT</u>                                                        <u>PAGE</u>

4    Government Exhibit 1       Admitted into evidence        24

5    Government Exhibit 5       Admitted into evidence        24

6    Government Exhibit 6       Admitted into evidence        24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

**DEPUTY CLERK:** Your Honor, we have criminal action 21-317-2, United States of America v. Benjamin Larocca.  We have Ms. Kathryn Fifield representing the Government; Mr. Bret Lee representing Mr. Larocca, all appearing in-person.  And we also have Ms. Ami Landon representing probation, and she's here in-person as well.

**THE COURT:**  Good afternoon.  Because of our COVID protocols, I'm going to -- I'm going to relax the protocols about coming up to the lectern.  You can -- Ms. Fifield, will you be speaking on behalf of the Government?

**MS. FIFIELD:**  Yes, Your Honor.

**THE COURT:**  You may stay at counsel table.  That includes Mr. Larocca, if you want to say something.  Just make sure -- and you can remain seated.  Just make sure you get the microphone up to you so the court reporter can hear. Or if you prefer, you can come up to the podium; it's totally up to you.  And if you are comfortable doing so, when you are speaking into the -- if you are at the podium speaking into the microphone, you can take your mask off, if you are comfortable doing so.  If you're not, keep it on, totally up to you.

Mr. Larocca, good afternoon.  Now, my very, very smart law clerk -- I wish I could say I caught this, saw a discrepancy yesterday in the terms of the plea and the plea

1   agreement, and we sent an e-mail to the parties alerting

2   them of the change.  And my understanding is -- well, not my

3   understanding.  In the plea agreement and at the plea

4   hearing, the parties appear to have conflated count two and

5   count three of the indictment.  Count two charges

6   Mr. Larocca with entering and remaining in a restricted

7   building or grounds in violation of 18 U.S.C. section

8   1752(a)(1).  Count three charges Mr. Larocca with disorderly

9   and disruptive conduct in a restricted building or grounds

10  in violation of 18 U.S.C. section 1752(a)(2).  The plea

11  agreement states that Mr. Larocca agrees to plead guilty to

12  count three charging him with entering and remaining in a

13  restricted building or grounds in violation of 18 U.S.C.

14  section 1752(a)(2).

15          Do you see the problem there?  Because that was

16  not count three, that was count two.  While count three does

17  charge Mr. Larocca with a violation of 18 U.S.C. section

18  1752(a)(2), the plea agreement's description of the offense

19  corresponds to a different count and statutory provision,

20  which is count two, 18 U.S.C. 1752(a)(1).  Likewise, so

21  during the plea hearing, the plea colloquy on April 8th of

22  this year, defense counsel described that the plea agreement

23  was for Mr. Larocca to plead guilty to the charge of 18

24  U.S.C. section 1752(a)(2), entering or remaining on

25  restricted government grounds.  And that's in the transcript

1     at page 30.

2           And in accepting Mr. Larocca's plea, I announced

3     that he was adjudged guilty of that which the parties

4     included in the plea agreement and defense counsel

5     described.  And that's at the hearing transcript at 41 in

6     which I said:  "Benjamin Larocca is now adjudged guilty of

7     entering and remaining in a restricted building in violation

8     of Title 18, United States Code section 1752(a)(2)."  Again,

9     the statutory citation did not correspond with the correct

10    description of the offense.  In their sentencing materials,

11    all the parties -- the Government, defense counsel and

12    probation, contemplate that Mr. Larocca pleaded guilty to

13    count three, disorderly and disruptive conduct in a

14    restricted building or grounds in violation of 18 U.S.C.

15    section 1752(a)(2).  So this is where we are today.

16          Now, this may seem like much of a difference

17    without -- a distinction without a difference because

18    they're both misdemeanor counts, but we have to make sure

19    everything's correct and everybody agrees with that.  So

20    what I'm going to do is reopen the plea colloquy as to the

21    statutory sections, make sure Mr. Larocca is in fact

22    intending and wants to and desires to plead guilty to the

23    correct statutory section.

24          So both the Government and defense counsel

25    suggested that the Court reopen the Rule 11 change of plea

1   hearing to amend the agreement to correct the description of

2   the offense.  And both parties propose that after doing so,

3   they prefer -- their preference is to go directly to

4   sentencing.

5                Is that right, Mr. Lee?

6          **MR. LEE:**  Yes, Your Honor, it is.

7          **THE COURT:**  And Ms. Fifield?

8          **MS. FIFIELD:**  That's correct, Your Honor.

9          **THE COURT:**  Okay, good.  That's fine with me.

10               So Mr. Bradley, could you place Mr. Larocca under

11   oath, please.

12         **DEPUTY CLERK:**  Mr. Larocca, please raise your

13   right hand.  Do you solemnly swear that you will well and

14   truly answer all questions propounded to you by the Court,

15   so help you God?

16         **THE DEFENDANT:**  Yes, I swear.

17         **THE COURT:**  Mr. Larocca, you may be seated.

18   You're once again under oath, as you were at your plea

19   hearing in April, okay.  Again, because you're under oath,

20   you have to answer all questions truthfully.  A failure to

21   do so could result in your facing criminal charges for

22   perjury or making a false statement.  So that's the

23   consequences of being under oath.

24               Now, have you discussed what I just talked about

25   with your lawyer?

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  Do you understand the discrepancy, the

3     error that occurred?

4          **THE DEFENDANT:**  Yes, Your Honor.

5          **THE COURT:**  Is it your intention to amend your

6     plea such that you would still be entering a guilty plea to

7     count three, charging you with a violation of Title 18 U.S.

8     Code section 1752(a)(2), but amending your plea to

9     incorporate the description of the offense that corresponds

10    with that provision of the code:  Disorderly and disruptive

11    conduct in a restricted building or grounds; is it your

12    intention?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  Have you discussed this with your

15    lawyer?

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  And do you understand why we're doing

18    what we're doing?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  Okay.  I'm going to ask you a couple

21    questions, as I did at the original plea -- change of plea

22    hearing, to ensure that you're competent, that you

23    understand the rights you're giving up, and that your

24    decision into entering this amended plea is voluntary and

25    knowing.

1          Again, just as at your plea colloquy, if there's

2     any time you don't understand a question, just tell me and

3     I'll either explain it or allow you to talk to your lawyer

4     about it.  Do you understand?

5          **THE DEFENDANT:**  Yes, Your Honor.

6          **THE COURT:**  Have you taken any alcohol or drugs in

7     the last 48 hours, or any medicine, that could affect your

8     ability to understand what you're doing by pleading guilty?

9          **THE DEFENDANT:**  No, Your Honor.

10         **THE COURT:**  Have you received any treatment

11    recently for any type of mental illness or emotional

12    disturbance or addiction to narcotic drugs of any kind?

13         **THE DEFENDANT:**  No, Your Honor.

14         **THE COURT:**  Are you completely satisfied with the

15    services of your lawyer, Mr. Lee, in this case?

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  Have you had enough time to talk with

18    Mr. Lee to discuss the charges against you and the amended

19    plea offer, and whether or not you should accept it?

20         **THE DEFENDANT:**  Yes, Your Honor.

21         **THE COURT:**  Have you received a copy of the

22    criminal indictment pending against you, the written charges

23    in this case?

24         **THE DEFENDANT:**  Yes, Your Honor.

25         **THE COURT:**  And have you read the charges and

1    fully discussed them and the case in general with Mr. Lee?

2                    **THE DEFENDANT:**  Yes, Your Honor.

3                    **THE COURT:**  Mr. Lee and Ms. Fifield, do either of

4    you have any question as to the defendant's competence to

5    plead at this time?

6                    **MS. FIFIELD:**  No issue from the Government.

7                    **MR. LEE:**  None from the defense, Your Honor.

8                    **THE COURT:**  Based on my previous interactions as

9    well as the answers given in today's hearing by Mr. Larocca,

10   I find that he is fully competent and capable of entering an

11   informed plea and amending his prior plea agreement.

12                   Are the parties going to execute an amended

13   agreement or are we just going to --

14                   **MS. FIFIELD:**  Your Honor, we have a handwritten

15   copy of the plea agreement that has been amended by hand and

16   signed.

17                   **THE COURT:**  Okay.  I don't need to see it -- well,

18   yeah, let me take a look.  I'm just looking at a copy of the

19   plea agreement which was originally dated February 14th,

20   2022.  There's been some handwritten annotations changing

21   the "entering and remaining" to "disorderly and disruptive

22   conduct in a restricted building."  It looks like it's been

23   initialed by both the prosecutor and Mr. Lee.

24                   Is that correct, Ms. Fifield?

25                   **MS. FIFIELD:**  That is correct.  It's also been

1    initialed by the defendant, who has the same initials as

2    defense counsel.

3              **THE COURT:**  That's right.  Mr. Larocca, did you

4    initial it?

5              **THE DEFENDANT:**  Yes, Your Honor.

6              **THE COURT:**  And Mr. Lee, is that your initials?

7              **MR. LEE:**  Yes, that's why I wrote Bret Lee below

8    there, just to differentiate between his initials and mine.

9              **THE COURT:**  I see, yes, thank you.  Then I accept

10   that the parties are aware, and that Mr. Larocca is aware of

11   this change.

12             Now, Mr. Larocca, do you remember the discussion

13   we had at your plea hearing about the rights you had to

14   trial, and the presumption of innocence and all the rights

15   you were giving up pursuant to this plea?

16             **THE DEFENDANT:**  Yes, Your Honor.

17             **THE COURT:**  Do you have any questions about those

18   rights -- which are still the same ones you're giving up,

19   and all that still applies equally to this plea, do you

20   understand?

21             **THE DEFENDANT:**  Yes, I understand.

22             **THE COURT:**  Any questions?

23             **THE DEFENDANT:**  No questions, Your Honor.

24             **THE COURT:**  And do you have any question about how

25   the amended plea agreement impacts your rights?

1          **THE DEFENDANT:** I have no questions, Your Honor.

2          **THE COURT:** And do you want to still enter into

3    the amended plea agreement to plead guilty in this case?

4          **THE DEFENDANT:** Yes, Your Honor.

5          **THE COURT:** Now, at the last plea hearing, we also

6    walked through a document called statement of offense that

7    describes what the Government would be prepared to prove at

8    trial about your criminal conduct.

9          Does the statement of offense still truly and

10   accurately describe what you did in this case?

11         **THE DEFENDANT:** Yes, Your Honor.

12         **THE COURT:** And do you understand the charges

13   against you?

14         **THE DEFENDANT:** Yes, Your Honor.

15         **THE COURT:** The parties have submitted, as I said,

16   an amended plea agreement.  I think I asked you before,

17   since the last plea agreement, is this the only other

18   offer -- well, I don't think I need to ask that.

19         The terms of the amended plea agreement, are they,

20   Mr. Lee and Ms. Fifield, otherwise the same other than the

21   description of the conduct?

22         **MS. FIFIELD:** The plea agreement is unchanged

23   aside from the handwritten annotations on the front page of

24   the plea agreement.

25         **THE COURT:** Mr. Lee?

1    **MR. LEE:**  Yes, Your Honor, that's correct.

2    Additionally, Your Honor, there is a factual basis for

3    (a)(2) within that plea agreement in those paragraphs.  So

4    the contemplation of the parties was (a)(2) from the start,

5    and the short title of the statute that was described was

6    just an error that referred to (a)(1), not (a)(2).  I think

7    we've corrected that now.

8        **THE COURT:**  Is that correct?

9        **MS. FIFIELD:**  Yes, Your Honor.  It's my

10   understanding that the parties at all times intended for

11   Mr. Larocca to plead guilty to 1752(a)(2).

12       **THE COURT:**  Mr. Larocca, is that what you agreed

13   to?

14       **THE DEFENDANT:**  Yes, Your Honor, that's what I

15   agreed to.

16       **THE COURT:**  Do you have any confusion or questions

17   about the agreement that you'd like to ask me or Mr. Lee

18   about?

19       **THE DEFENDANT:**  No, Your Honor.

20       **THE COURT:**  Well, I accept that this plea

21   agreement is of the type authorized by Federal Rule of

22   Criminal Procedure 11(c)(1)(A), and that it specifies that

23   Mr. Larocca will not be further prosecuted criminally by the

24   U.S. Attorney's Office for the District of Columbia for the

25   conduct set forth in the statement of offense; and that he

1  will not be charged with any nonviolent criminal offense in

2  violation of federal or District of Columbia law, which he

3  committed within the District of Columbia before the

4  execution of the plea agreement, and about which the United

5  States Attorney's Office for the District of Columbia was

6  made aware of before execution of the plea agreement.

7          With regard to sentencing, the same sentencing

8  terms and the same terms of imprisonment apply.  Do you

9  understand that?

10         **THE DEFENDANT:**  Yes, Your Honor.

11         **THE COURT:**  The same terms of supervised release

12  apply.  Do you understand that?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  That is, the most I could sentence you

15  in this case would be a maximum of one year in jail.  Do you

16  understand?

17         **THE DEFENDANT:**  Yes, Your Honor.

18         **THE COURT:**  And the maximum term of supervised

19  release that I could give you is a year.  Do you also

20  understand that?

21         **THE DEFENDANT:**  Yes, I understand, Your Honor.

22         **THE COURT:**  And the maximum fine that I could give

23  you by statute is $100,000.  Do you understand that?

24         **THE DEFENDANT:**  Yes, I understand.

25         **THE COURT:**  You will also have to pay a mandatory

1   special assessment of $25 to the Clerk of the Court for a

2   class A misdemeanor conviction.  Do you understand?

3           **THE DEFENDANT:**  Yes, I understand, Your Honor.

4           **THE COURT:**  And as part of your plea agreement,

5   you have agreed to pay restitution to the Architect of the

6   Capitol in the amount of $500.  Do you understand that?

7           **THE DEFENDANT:**  Yes, I understand, Your Honor.

8           **THE COURT:**  With regard to the guidelines, the

9   same terms apply as I described to you at your original plea

10  agreement.  The guidelines -- I have to consider the

11  guidelines in every case, including this one, but they're

12  not mandatory.  I just have to consider them and take them

13  into account.

14          Do you understand that?

15          **THE DEFENDANT:**  Yes, I understand, Your Honor.

16          **THE COURT:**  Some additional questions regarding

17  voluntariness.  Has anyone forced, threatened or coerced you

18  in any way into entering this plea of guilty?

19          **THE DEFENDANT:**  No, Your Honor.

20          **THE COURT:**  Has anyone, including your lawyer, the

21  police, the prosecutor or any other person you've come in

22  contact with since your arrest, promised or suggested to you

23  that just because you're pleading guilty I'll give you a

24  lighter sentence?

25          **THE DEFENDANT:**  No, Your Honor.

1      **THE COURT:**  Has anyone made any promises to you in

2    connection with the guilty plea other than the ones in the

3    plea agreement or stated in open court?

4      **THE DEFENDANT:**  No, Your Honor.

5      **THE COURT:**  And are you entering this plea of

6    guilty voluntarily and of your own free will because you are

7    guilty?

8      **THE DEFENDANT:**  Yes, Your Honor.

9      **THE COURT:**  Is there anything you don't understand

10   about the proceeding either in April, the original plea

11   colloquy, or today's change of plea hearing?

12     **THE DEFENDANT:**  I understand, Your Honor.

13     **THE COURT:**  And as to count three of the

14   indictment charging you with disorderly and disruptive

15   conduct in a restricted building or grounds in violation of

16   18 U.S.C. section 1752(a)(2), how do you plead?

17     **THE DEFENDANT:**  I plead guilty, Your Honor.

18     **THE COURT:**  I'm satisfied that Benjamin Larocca is

19   fully competent and capable of making a decision today; that

20   he understands the nature of the charges and the

21   consequences of the plea; that the plea of guilty is knowing

22   and voluntary; that he is acting of his own free will in

23   pleading guilty; and that there is an actual factual basis

24   containing each of the essential elements of the offense for

25   his plea.  Therefore, I do accept the guilty plea, and

1    Benjamin Larocca is now adjudged guilty of disorderly and

2    disruptive conduct in a restricted building or grounds in

3    violation of 18 U.S.C. section 1752(a)(2).

4              This concludes this abbreviated amended Rule 11

5    hearing.  Anything else we need to discuss with regard to

6    Mr. Larocca's plea, Ms. Fifield?

7              **MS. FIFIELD:**  Not from the Government, Your Honor.

8              **THE COURT:**  Mr. Lee?

9              **MR. LEE:**  I do not believe so, Your Honor.

10             **THE COURT:**  Are we ready to move forward with

11   sentencing?

12             **MS. FIFIELD:**  Yes, Your Honor.

13             **THE COURT:**  Mr. Lee?

14             **MR. LEE:**  Yes.

15             **THE COURT:**  Okay.  I have received and reviewed

16   the presentence report and the sentencing recommendation

17   from the probation office in preparation for sentencing, as

18   well as the following documents that were submitted by

19   counsel:  The plea agreement and statement of offense that

20   Mr. Larocca signed, as well as the amended plea agreement

21   and statement of offense; the sentencing memoranda from the

22   Government, and three video exhibits, all of which I've

23   watched; sentencing memorandum from Mr. Larocca, along with

24   a letter from Mr. Larocca.

25             Mr. Lee, it's my understanding that Mr. Larocca

1       has -- does he have family in the courtroom today?

2               **MR. LEE:**  He does, Your Honor.  His stepfather and

3       his mother are both present in the courtroom.  He's in the

4       black jacket in the back and she's in --

5               **THE COURT:**  Good afternoon.  I'm sure your son

6       appreciates your presence here.  Let me first begin with the

7       presence report.  The final presence report and

8       sentencing recommendation were filed on August 3rd, 2022.

9               Ms. Fifield, does the Government have any

10      objection to any of the factual determinations set forth in

11      the presence report?

12              **MS. FIFIELD:**  Your Honor, the Government's only

13      objections to the draft presence investigation report

14      were typographical errors that have since been corrected.

15      So the Government at this point has no objections to the

16      final presence investigation report.

17              **THE COURT:**  Okay.  Are you expecting an

18      evidentiary hearing, do you have any witnesses you intend to

19      put on today?

20              **MS. FIFIELD:**  The Government does not have

21      witnesses, but the Government intends to play video

22      exhibits.

23              **THE COURT:**  I'll allow that.

24              Mr. Larocca, are you still fully satisfied with

25      the services of Mr. Lee in this case?

18

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Do you feel that you've had enough

3   time to talk to him about the probation department's

4   presentence report, and the papers filed by the Government

5   in connection with the sentencing?

6        THE DEFENDANT:  Yes, Your Honor.

7        THE COURT:  Have you gone over the presentence

8   report with Mr. Lee?

9        THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  Mr. Lee, have you and Mr. Larocca read

11  and discussed the presentence report?

12       MR. LEE:  Yes, Your Honor.  It was provided to him

13  electronically, and we discussed it over the phone because

14  he's in Texas and I'm here.

15       THE COURT:  Okay.  Are there any disputed issues

16  of fact -- that is, does Mr. Larocca have any objection to

17  any of the factual statements set forth in the presentence

18  report?

19       MR. LEE:  Much like the Government, we submitted

20  our own revisions.  They were just some typographical issues

21  that were quickly corrected.  We want to thank the probation

22  officer for her good work.  We don't believe there are any

23  inaccuracies or corrections needed to the August 3rd final

24  PSR which has been submitted to the Court.

25       THE COURT:  Hearing no objection, I will accept

1    the factual recitation in the final presentence report

2    regarding the circumstances of the offense.  Therefore, the

3    facts as stated in the presentence report will be my

4    findings of fact for the purpose of this sentencing.

5            The presentence report lays out the probation

6    office's calculation of the advisory guideline range that

7    applies in this case.  This calculation was done using the

8    2021 guidelines manual, and is as follows.  The guideline

9    for a violation of 18 U.S.C. section 1752(a)(2) is found in

10   U.S. sentencing guideline section 2A2.4 of the guidelines.

11   That section provides that an offense involving obstructing

12   or impeding officers has a base offense level of 10.  The

13   defendant has demonstrated acceptance of responsibility for

14   the offense.  Accordingly, the offense level is decreased by

15   two levels.  That results in a total offense level of eight.

16           Any objection to that calculation of the offense

17   level, Ms. Fifield?

18           **MS. FIFIELD:**  No objection from the Government.

19           **THE COURT:**  Mr. Lee?

20           **MR. LEE:**  No, I think it's accurately calculated.

21   Thank you, Your Honor.

22           **THE COURT:**  Turning to the applicable criminal

23   history category, the presentence investigation report has

24   found that Mr. Larocca has zero prior convictions that

25   require criminal history points in the guidelines manual

1    giving him a criminal history point subtotal of zero, which

2    puts him in criminal history category one.  Based on the

3    offense level and criminal history category I've just

4    discussed, the presentence report calculates the guidelines

5    sentencing range to be zero to six months of imprisonment.

6         Any objection to that calculation or criminal

7    history category, Ms. Fifield?

8         **MS. FIFIELD:**  No objection.  And I'd also note

9    that that calculation is consistent with the plea agreement

10   reached by the parties.

11        **THE COURT:**  Mr. Lee?

12        **MR. LEE:**  That's correct.

13        **THE COURT:**  Having determined the applicable

14   guidelines range, I will now consider departures and

15   variances.  The presentence report does not include any

16   departure grounds, and the parties do not make any arguments

17   regarding a departure or a variance.

18        Is that correct, Ms. Fifield?

19        **MS. FIFIELD:**  I apologize, Your Honor, could you

20   briefly rephrase?

21        **THE COURT:**  Yes.  With regard to departures and

22   variances, the presentence report does not include any

23   grounds for a departure, and the parties do not make any

24   arguments regarding a departure or variance; is that

25   correct?

1      **MS. FIFIELD:**  That is correct, Your Honor.

2      **THE COURT:**  Mr. Lee?

3      **MR. LEE:**  Correct, Your Honor.

4      **THE COURT:**  Now, section 3553 requires me to

5  consider a variety of factors, including the sentencing

6  range, the guidelines prescribed -- which I've just

7  discussed, and the applicable penal statutes.  The charge of

8  disorderly and disruptive conduct in a restricted building

9  or grounds in violation of 18 U.S.C. section 1752(a)(2) is a

10  class A misdemeanor that carries a maximum term of a year

11  imprisonment.  This statute provides that the Court may

12  impose a term of supervised release of no more than a year,

13  and under the guidelines, that range is a year.

14      The statutes also provide that Mr. Larocca is

15  eligible for up to five years of probation, and that any

16  term of probation shall be at least one year, but no more

17  than five years.  Since the applicable guideline range is in

18  zone A of the sentencing table, a condition requiring a

19  period of community confinement, home detention or

20  intermittent confinement may be imposed, but is not

21  required.  The statute sets a maximum fine of up to

22  $100,000.  The guidelines range for this offense is from

23  $2,000 to $20,000.  Probation calculated the guidelines fine

24  range to be $2,000 to $9,500.  That's at paragraph 94.

25      Was that a mistake, Ms. Landon?

1      **MS. LANDON:**  Yes, Your Honor.

2      **THE COURT:**  Okay.  A special assessment of $25 is

3  mandatory.  And pursuant to 18 U.S.C. section 3663(a)(3) and

4  the parties' plea agreement, restitution in the total amount

5  of $500 shall be ordered.

6      Counsel, have I stated accurately the statutory

7  and guidelines framework under which we are operating,

8  Ms. Fifield?

9      **MS. FIFIELD:**  Yes, Your Honor.

10     **THE COURT:**  Mr. Lee?

11     **MR. LEE:**  Yes, Your Honor.  I believe it's also

12  referenced within document 60 on our docket.

13     **THE COURT:**  I'm sorry?

14     **MR. LEE:**  I believe it's also referenced -- those

15  exact calculations and guidelines are referenced in document

16  60 on our docket.

17     **THE COURT:**  Yes.  Before I discuss the other

18  sentencing factors that will bear on my decision, I'll at

19  this time notify the parties, if they don't know already,

20  that the probation office has recommended, taking into

21  account the guidelines range and the available sentences and

22  the 3553(a) factors, 60 months of probation, a $2,000 fine

23  and $500 in restitution.  And again, this recommendation is

24  not based on any facts or circumstances that have not

25  already been revealed to the parties in the presentence

1    report.

2            So at this point, I'd like to give the parties the

3    opportunity to address the Court.  Ms. Fifield, will that be

4    you?

5            **MS. FIFIELD:**  Yes, Your Honor.  Good afternoon,

6    Your Honor.

7            **THE COURT:**  Good afternoon.

8            **MS. FIFIELD:**  As the Court previously noted, the

9    Government has submitted three video exhibits for the

10   Court's review ahead of time.  And I understand that the

11   Court has reviewed those videos.  The Government intends to

12   play portions of those video exhibits as part of its

13   allocution today.  And at this point, the Government would

14   move Exhibits 1, 5 and 6 into evidence.

15           **THE COURT:**  Any objection?

16           **MR. LEE:**  Your Honor, there's not an objection to

17   the Court reviewing those or the Government playing them.  I

18   just wanted to note -- and I had this discussion with

19   Ms. Fifield, that I believe it is video number -- or Exhibit

20   No. 5 which shows Christian Cortez and a person in close

21   proximity to him filming an interaction -- a bad interaction

22   with a number of police officers.  We wanted to clarify --

23   and I spoke with Ms. Fifield about that, Mr. Larocca was not

24   the person who filmed that video, it was a different person.

25           Mr. Larocca -- and after a discussion with

**1**  counsel, we did not see him in that video, in any of the

**2**  frames of that video.  We do know from other videos and

**3**  other evidence he was nearby, but not right there.  We don't

**4**  want that video to be misleading to the Court to say that he

**5**  was right there holding the phone in the officer's face.

**6**      **THE COURT:**  I understand, and certainly you can

**7**  put that on the record -- you just have, but you can also

**8**  clarify on allocution that that's the case.  I don't think

**9**  Ms. Fifield plans to argue that he filmed it.  But certainly

**10**  all the video exhibits are -- depict the circumstances and

**11**  the situation in which Mr. Larocca was present on that day.

**12**      So the motion is granted, the video exhibits will

**13**  be admitted into evidence.

**14**      (Government Exhibits 1, 5 and 6 admitted into evidence)

**15**      **MS. FIFIELD:**  Thank you, Your Honor.  And the

**16**  Government did intend to make that clarification as part of

**17**  the allocution.  As the Court noted, this is a class A

**18**  misdemeanor offense.  The guidelines for Mr. Larocca are

**19**  zero to six months.  The Government is requesting a midpoint

**20**  of the guidelines range sentence for Mr. Larocca:  That's

**21**  three months of incarceration; one year of supervised

**22**  release; 60 hours of community service; and $500 in

**23**  restitution as agreed to by the parties in the plea

**24**  agreement.

**25**      Just as a brief summary to orient the Court as to

1    the conduct at issue here.  The Court's been through this

2    before, so I'm not going to get into detail about the whole

3    of the riot in general.  But I do like to briefly note at

4    the beginning of my sentencings in these January 6th cases

5    that to the extent that anything I say is repetitive of

6    myself or of my colleagues, things the Court has heard

7    before, that's a direct reflection of the number of people

8    who participated in this riot, and the number of people who

9    are facing sentencing before the judges in this district.

10            Mr. Larocca traveled to Washington, D.C. on

11   January -- pardon me, prior to January 6th with his roommate

12   at the time, Christian Cortez.  The two of them approached

13   the Capitol from the west.  They found themselves on the

14   west lawn at approximately -- if I remember my timing

15   correctly, between 2:00 and 2:25 p.m.  And this was when the

16   riot was really at its zenith.  Rioters had already achieved

17   major breaches that had allowed them to get to the upper

18   west terrace, and ultimately to the interior of the Capitol

19   building.

20            And what that means for Mr. Larocca and Mr. Cortez

21   is that they really saw the peak of -- and I want to be as

22   respectful as possible when I characterize this, but the

23   word that comes to mind for me is the insanity of what was

24   happening.  Mr. Cortez took a selfie where the walls of the

25   Capitol leading to the upper west terrace are in the

1    background.  There are individuals climbing on those walls

2    in that selfie.  And that was Exhibit --

3            THE COURT:  Are you going to play those,

4    Ms. Fifield?

5            MS. FIFIELD:  Yes, I will play the videos.  But

6    Exhibit 2 is an image, and it's included in the Government's

7    sentencing memoranda.  That's the selfie by Mr. Cortez that

8    includes individuals climbing on the wall in the background.

9            Mr. Cortez and Mr. Larocca proceeded to the upper

10   west terrace, and then they entered the United States

11   Capitol building at approximately 2:53 p.m. through the

12   parliamentarian door.  The Government has included a map --

13   and that's Exhibit 4 -- in the Government's sentencing

14   memorandum that roughly shows the path that Mr. Cortez and

15   Mr. Larocca took that day.  It shows the parliamentarian

16   door relative to the northwest stairs where they ascended to

17   the upper west terrace.  It also indicates the north door,

18   which was their exit point, at approximately 3:06 p.m.

19           In the approximately 15 minutes that Mr. Cortez

20   and Mr. Larocca were inside the Capitol building, they, as

21   said in the Government's sentencing memoranda, did not cover

22   a lot of ground.  But the Government attributes that to the

23   heavy police presence that was in the Brumidi Corridors at

24   this time during the riot.  And there was a heavy police

25   presence there, because the Brumidi Corridors were in close

1    proximity to member of Congress' evacuation routes and to

2    the Senate chamber, which was one floor above those Brumidi

3    Corridors.

4           Mr. Larocca and Mr. Cortez found themselves in a

5    pack of rioters that faced off with a line of Capitol Police

6    in the Brumidi Corridors where the rioters chanted:  "Whose

7    house?  Our house," and "USA, USA" in the face of these

8    Capitol police officers who were easily identifiable as law

9    enforcement.  And at this point, the Government would like

10   to pull up Exhibit 1.  Exhibit 1 is Mr. Larocca's Instagram

11   story from January 6th, 2021.  An Instagram story, as

12   indicated in the Government's sentencing memorandum, can be

13   a composite of multiple video clips or images taken by an

14   Instagram user.  That's what Exhibit 1 is.  You'll see

15   multiple clips that were filmed by Mr. Larocca, one

16   including a caption in the Brumidi Corridors saying, "We got

17   in."  The Court's indulgence.

18           **THE COURT:**  Sure.

19       (Video played)

20           **MS. FIFIELD:**  Now, what's notable about what is

21   visible in Exhibit 1, first we see folks climbing on the

22   walls of the Capitol in the first clip on Exhibit 1, which

23   is the first portion of Mr. Larocca's Instagram story.  But

24   once they're inside the Capitol, Mr. Larocca and Mr. Cortez,

25   what's striking about Exhibit 1 -- and I understand from my

1    colleagues who have taken the tour of the Capitol with

2    Capitol Police, is just how loud it was in those corridors

3    for the Capitol Police.  It was -- those voices, those

4    chants were echoing off the marble.

5            And even though those officers appear in Exhibit 1

6    to be calm, the Government is aware from testimony provided

7    by Capitol police officers in other Capitol riot trials that

8    those interactions were truly terrifying for those officers.

9    In Exhibit 1, we can also see Mr. Cortez briefly as

10   Mr. Larocca pans to capture him inside the Brumidi

11   Corridors.  We can see Mr. Larocca when he flips around to

12   selfie mode.

13           Now, as stated previously, Mr. Larocca and

14   Mr. Cortez exited the Capitol through the north door which

15   was the same floor as where they entered, not that far in

16   terms of physical distance from where they entered.  They

17   exited after being directed to do so by Capitol Police.  And

18   per Mr. Larocca's own interview, he said that they left

19   after being threatened with arrest.  However, after they

20   exited the north doors, they did not leave Capitol grounds.

21   They joined a crowd of rioters at the north doors who were

22   fighting to get back into the Capitol after they exited.

23   Capitol Police were trying to fight them back or keep them

24   out of the Capitol.

25           Mr. Cortez engaged directly in this confrontation

1   with officers, and we'll see that in a video

2   exhibit shortly.  Mr. Larocca did not engage directly in

3   this confrontation, but he was in the proximity of it, and

4   he was very much aware of what was happening.  We also know

5   that he was aware of what was happening, because later after

6   this confrontation, Mr. Cortez posted a selfie on Instagram

7   showing him red in the face, red eyes, clearly indicating

8   that he had been sprayed with a chemical irritant.  And that

9   selfie had police in the background.  And Cortez added the

10   caption:  "Hanging with the besties."  And Mr. Larocca

11   commented on that selfie on Instagram saying:  "Hahahahaha."

12          So at this point, I would like to -- actually,

13   before I do that, is it possible to have the Elmo?  What I'd

14   like to show the Court before playing Exhibits 5 and 6 are

15   screenshots.  What I'm showing the Court are screenshots of

16   an open source video.  The Government has identified this

17   video as news to share.  You could see that label down in

18   the lower right corner.  The Government is not introducing

19   this video into evidence in this sentencing hearing, but the

20   Government will introduce the screenshots from the video

21   because it helps illustrate to the Court where Mr. Larocca

22   was relative to this confrontation that we're going to see

23   in Exhibit 5.

24          So in Exhibit 8A, which is a screenshot from this

25   video which is available at the YouTube link shown on the

1   page, Mr. Larocca is circled with a red oval.  He's wearing

2   a red cap, sunglasses and the same blue hoodie that we see

3   him wearing in images and videos that have otherwise been

4   introduced to the Court.  Mr. Larocca is standing directly

5   in front of him on the stairs --

6               **THE COURT:**  Mr. Cortez.

7               **MS. FIFIELD:**  Pardon me, Mr. Cortez, thank you,

8   Your Honor.  He appears to be wiping his eyes.  He's wearing

9   a red beanie holding a blue flag.  And based on the

10  Government's review of the evidence, this screenshot was

11  from about five minutes before Mr. Cortez has his

12  confrontation with Capitol Police outside the north doors.

13              The second screenshot, which the Government has

14  labeled Exhibit 8B, is not long after this, a couple seconds

15  later after the first screenshot.  The crowd, including

16  Mr. Cortez and Mr. Larocca, begin to move.  Mr. Cortez moves

17  very close to the north doors.  You can see him indicated on

18  the right-hand side of the frame by a red circle.  Whereas

19  Mr. Larocca is further back, and he appears just after this

20  to be getting pushed away from the doors by the crowd.

21  Mr. Larocca is indicated in Exhibit 8B by a red circle on

22  the left-hand side of the frame.

23              Finally, the Government has labeled this

24  screenshot Exhibit 8C.  Mr. Cortez is still visible in the

25  same place near the north doors on the right-hand side of

1    the frame.  And indicated by a small red circle in the

2    middle of the frame, we can see the back of Mr. Larocca's

3    head wearing that red cap as he is pushed away from the

4    north doors by the crowd.

5              And we're finished with the Elmo.  Can we pull up

6    Exhibit 6, please.  As Mr. Leach -- who I have not

7    introduced yet.  Mr. Leach is a paralegal with the United

8    States Attorney's Office who is assisting with video today.

9              **THE COURT:**  Good afternoon.

10             **MS. FIFIELD:**  As Mr. Leach pulls up Exhibit 6,

11   Exhibit 6 is a video that was recovered from Mr. Larocca's

12   cell phone.  And it was recorded by him, and shows his

13   position relative to the north doors.

14             (Video played)

15             **MS. FIFIELD:**  Some of the striking aspects of

16   Exhibit 6, which shows us what Mr. Larocca would have been

17   able to see and hear at this time, there's smoke everywhere.

18   It's not just near the doors, it is all around.  Mr. Larocca

19   in Exhibit 6 is traveling back and forth within 10 feet from

20   the doors and about a hundred feet from the doors based on

21   my estimation.  And there's smoke even at that furthest

22   distance from the door.  The smoke is on -- or the residue

23   of what looks like fire extinguisher retardant is also on

24   Mr. Larocca's clothing, which we can see when he flips the

25   camera around to selfie mode.

1          What we can also see when he flips that camera

2    around is just how impassive his face is in the midst of all

3    of this chaos, which the Government has argued is concerning

4    and an aggravating factor in this case.  Now, it's not clear

5    from this video whether Mr. Larocca intended to get closer

6    to the doors where his friend Mr. Cortez was, or whether he

7    intended to hang back; whether he exercised that much

8    judgment.  It looks like he might be trying to get closer to

9    the doors.  But the fact remains that he was on the

10   periphery of this crowd, but still very much aware of what

11   was going on.  In Exhibit 6 you can also hear what we'll see

12   in Exhibit 5, which is a bike rack barricade being used as a

13   battering ram against those doors.  You can hear it clanging

14   in the background of Exhibit 6.

15        So I'm going to have Mr. Leach pull up Exhibit 5.

16   Exhibit 5 is approximately seven minutes long.  We're not

17   going to play the whole thing, we're going to play the first

18   two minutes, and one minute in the middle.  So we'll start

19   at the zero mark on the counter.

20        (Video played)

21        **MS. FIFIELD:**  We've paused at two minutes and 30

22   seconds into the video.  I'm going to ask Mr. Leach to fast

23   forward to four minutes and 30 seconds into the video.

24        (Video played)

25        **MS. FIFIELD:**  We stopped at five minutes and 21

1    seconds on the video counter.  Thank you, Mr. Leach.

2         Now, as noted by Mr. Lee, and as briefly indicated

3    by myself earlier, Exhibit 5 is not a video that is recorded

4    by Mr. Larocca.  But as the Court did point out, it

5    certainly displays the circumstances that would have been

6    perceptible to Mr. Larocca at the time outside of those

7    north doors.  And what is most notable, I think, about

8    Exhibit 5 is in addition to Mr. Cortez's altercation with

9    the police -- which, as we've noted, Mr. Larocca was very

10   much aware of, and I won't get into that in any great depth

11   here.

12        But I think it is worth noting in Exhibit 5 that

13   these Capitol police officers are standing in front of the

14   north doors, at first trying to negotiate with these rioters

15   as they're being screamed at.  The Capitol police officer in

16   a blue face mask, as he's negotiating with these rioters, is

17   holding an M4 assault rifle.  Yet, these officers are

18   exercising incredibly cool heads and quite a bit of

19   restraint before they attempt to try to close those doors,

20   which is when Mr. Cortez steps in front of the doors and

21   distracts their attention away from that task requiring them

22   to engage with him rather than shut the doors.

23        So I think the best way to describe Mr. Larocca's

24   relationship to everything that we just saw and everything

25   that happened during the time that he was on Capitol grounds

1   is casual.  He was on the grounds, and he was casual.  He

2   entered the building, and he was casual.  He stood facing

3   off with these police officers, he flipped his camera around

4   and we could see his face as others are screaming at Capitol

5   Police, and he is casual.  He exits the building, and his

6   friend is the one screaming at Capitol Police as they

7   negotiate with these rioters.  And again, he flips his

8   camera around to show his face.  He's covered in fire

9   extinguish retardant, and he's casual.

10          And that may seem benign at first blush, but from

11   the Government's perspective, it is incredibly disturbing.

12   Because it reflects an attitude of indifference that made

13   the numbers of this riot possible, that made people believe

14   that they weren't doing anything wrong just by entering the

15   building.  When we saw -- even for those individuals who

16   were not directly engaging in violence, they required the

17   resources of Capitol Police, and that facilitated violence

18   and destruction elsewhere.  Those Capitol police officers

19   were so stretched thin at these moments, and people like

20   Mr. Larocca and Mr. Cortez drew their attention to those

21   Brumidi Corridors.  And even if they themselves did not

22   commit physical violence, they distracted the Capitol

23   Police, and they did so casually with an attitude of

24   indifference, at least on Mr. Larocca's part.

25          In addition, the Government in these cases has

1    highlighted promotion of the riot on social media as an

2    aggravating factor.  Mr. Larocca did that.  And finally,

3    before Mr. Larocca filed his sentencing memorandum and his

4    letter to the Court, he had really not made any sort of

5    meaningful expression of remorse for his conduct.  Now, the

6    Government has reviewed that letter.  I applaud Mr. Larocca

7    for his expression of remorse and regret, if it is genuine.

8    I hope it is.  I hope he stands here before this Court, if

9    he chooses to speak, and expresses the same contrition with

10   the same amount of force that is expressed in that letter.

11   I want to live in a world where when folks say they're

12   sorry, we can expect that they're telling the truth.

13   Unfortunately, that has not proven to be the case in many of

14   these Capitol riot cases.

15          So the Government -- to the extent it's possible

16   to credit genuine remorse, the Government does not expect

17   the Court not to do that.  But the Government respectfully

18   requests that the Court exercise reasonable caution in

19   crediting remorse when, in other cases, it has proven to not

20   be as genuine as it seems on the courtroom floor.

21          And if the Court has no further questions, the

22   Government will conclude just by restating its

23   recommendation.  The Government thinks that three months,

24   which is the midline -- midpoint of the sentencing

25   guidelines range here, is appropriate for this charge, this

1    defendant.  And the Government submits that probation is not

2    sufficient, it's not sufficient but greater than

3    necessary -- or it does not achieve the goals sought by

4    section 3553(a).  Thank you.

5            THE COURT:  Thank you, Ms. Fifield.

6            Mr. Lee.

7            MR. LEE:  Thank you, Your Honor.  If I may take

8    off my mask just to clearly address the Court?

9            THE COURT:  Yes.

10           MR. LEE:  I want to start right where the

11   Government left off, with remorse, and with the remorse that

12   Mr. Larocca feels and what's in his letter, and what's --

13           THE COURT:  Can you get the microphone a little

14   closer to you?

15           MR. LEE:  Yes, sorry.  What's in his letter and

16   what's in his mind and what's in his heart.  Because I don't

17   think anyone starts from a place of going and being in that

18   situation without drastically misjudging the situation,

19   without drastically being in a different world.  And we know

20   from some of the social media messages that --

21           THE COURT:  Again, can you -- I can hear you, but

22   I'm worried about my court reporter who has headphones on.

23   So his only way of hearing you is the microphone.

24           MR. LEE:  Is it on, Your Honor, can you hear me?

25           THE COURT:  It's on, just get closer.

1          **MR. LEE:**  I'll try, I'll try my very best.

2          **THE COURT:**  Yes, there you go.  That's perfect.

3    Thank you.

4          **MR. LEE:**  Thank you, Your Honor.  So Your Honor, I

5    apologize, I don't mean to be intense by leaning in like

6    this --

7          **THE COURT:**  No, no.

8          **MR. LEE:**  -- but I do want to make sure that

9    everyone is able to hear me.  The social media messages sent

10   privately by Mr. Larocca afterwards that are in the

11   statement of facts and everything else like that shows that

12   he didn't get it at the time and right after.  He didn't

13   understand the significance of what had happened.  It has

14   been a learning curve for him.  It has been coming from a

15   place of immaturity, of this initial belief, oh, it was

16   Antifa, it was Antifa, provocateurs or something like that,

17   a place of misinformation, but growing from that.  And he

18   has grown from it.  He has accepted responsibility.

19          I can tell the Court, from the very onset of this

20   case, when we were first engaged in negotiations with the

21   Government and Mr. Edwards, Mr. Larocca wanted to take

22   responsibility for what he did.  It was, of course, through

23   counsel in negotiations to determine the exact charges that

24   would come out of this, and what he'd be pleading to in the

25   statement of facts and everything else like that.  But he

1      took ownership with the very first steps of the case.

2               When he was contacted by law enforcement, by the

3      FBI, he voluntarily went to an interview with them on

4      January 20th, the first time they contacted him.  He didn't

5      stonewall, he didn't seek counsel, he didn't delete or

6      destroy evidence, as others in other cases have done.  He

7      did not purge his social media accounts.  In fact, when

8      contacted by the FBI and when they interviewed him, he

9      turned over a USB to them of his videos.  He gave them

10     access to his phone.  It wasn't because he was proud, it's

11     because he wanted to cooperate with law enforcement.  It's

12     because he wanted to do what he needed to do to start to

13     make amends for this situation.

14              And what he did in the days afterwards, he's -- he

15     is not proud of what he was doing when he was there.  He

16     feels remorse, he feels regret, it is genuine.  His letter

17     is genuine.  His letter comes from himself.  It's not an

18     exercise -- it wasn't written by counsel.  And the apology

19     behind it is sincere, because he has grown.  He has seen, as

20     more information came out, as the scope of what happened

21     that day -- not just what he was around, but what other

22     people did and other things that happened.  He understands

23     that he put a burden on law enforcement by being there.  And

24     as a person who respects law enforcement, as a person who --

25     again, what we see in this footage, he was not the one who

1  was getting in their face.  He wasn't yelling "traitor" or

2  "oath breaker" or any of these other things, any slurs

3  towards law enforcement.  But he was there, and he was not

4  taking it nearly serious enough.

5          **THE COURT:**  He wasn't looking very supportive of

6  law enforcement that day.

7          **MR. LEE:**  I'm sorry, Your Honor?

8          **THE COURT:**  I said he wasn't coming across as very

9  supportive of law enforcement that day.

10          **MR. LEE:**  No, Your Honor.  And again, I think what

11  we have to do is we have to look at the context of this

12  whole individual.  And this whole individual -- again, I

13  think that we can put a lot of weight into what he did with

14  the FBI interview, and what he's done with the courts, and

15  what he's done in terms of cooperating and putting himself

16  on this track afterwards.  Because he did not, unlike others

17  who have been sentenced, delete videos or try to hide things

18  or try to minimize or downplay.  He came from a place of

19  misunderstanding, not understanding the significance of what

20  he had done, not understanding the significance of what

21  others had done, because he's a young man and he has to grow

22  and he has to mature.  And he has started that process.

23          He has started coming away from the misinformation

24  that led him to be there on that day.  He has started to

25  come away from, and has made enormous steps towards building

1      a good path for himself for the future.  I think the Court

2      has seen in the PSR about the educational opportunities he's

3      undertaken.  And the Court has seen about some of the other

4      steps he's taken, and how he's acted while on pretrial.

5           But Your Honor, I want to address some of the

6      considerations the Government put forward, starting at page

7      15 of their memoranda, where they break down the different

8      pieces of what happened that day, and looking at

9      specifically whether they're aggravating or mitigating, and

10     to what degree each one of those factors are.  So

11     Mr. Larocca was in the Brumidi Corridors for about 13

12     minutes.  And he did follow an officer's direction to leave.

13     And there's a video which I would like to play, it's just

14     from CCTV inside the Capitol showing him exiting from the

15     north doors.  And I believe that the Government will be able

16     to put that up for us.

17          **THE COURT:**  Excuse me, Mr. Bradley, can you let

18     the jurors know we're going to be a little longer than 2:00.

19     It's going to be a bit past that.

20          And Ms. Jones, you're here.  I think we're going

21     to run a little bit past when I told everybody.  Thank you.

22          Okay, go ahead, Mr. Lee.

23          **MR. LEE:**  Yes, Your Honor, thank you.  I'll check

24     with the Government to see if they have it.  Your Honor,

25     just for the record, this clip does not have sound.  But

1    this is a video clip provided in discovery to the defense of

2    the situation inside the Capitol that day.  This is the area

3    where Mr. Larocca exited.

4              **THE COURT:**  All right.

5              **MR. LEE:**  And I'll just draw the Court's attention

6    to the time stamp at the top, it's about 3:06 p.m. on

7    January 6th.

8         (Video played)

9              **MR. LEE:**  You can see Mr. Larocca right there in

10   the shorts exiting the building.  Thank you, sir.

11             Your Honor, his conduct is criminal.  What he did

12   that day by being there, by being involved in the Capitol

13   riot, it is criminal.  He is taking responsibility for that.

14   But in context, he is not the worst actor on that day,

15   thankfully so.  And in context, what we have here is there's

16   no evidence that he encouraged violence.  There's certainly

17   no evidence that he participated in violence directly

18   himself.  His reaction -- and the Government puts a lot of

19   stock into him seeming cold and calm, eerily calm in this

20   situation of utter chaos.

21             Your Honor, I actually think I differ with them.

22   It's mitigating compared to those who were agitating, who

23   were aggravated, who were insulting police officers, who

24   were in their face, who were fired up and firing others up.

25   In fact, if cooler heads had prevailed that day, perhaps we

1   would have never had one of the darkest days in our history.

2   So I don't see it as something where he is in a situation

3   where he is firing other people up or encouraging them to

4   acts or violence or property destruction or anything else

5   like that.  His calmness actually says that -- it factors

6   more into that he didn't get it.  It wasn't fitting for the

7   situation.  It was an odd reaction.  It's odd compared to

8   many others who we can see who are yelling and cursing and

9   screaming.  The only time he seemed to yell at all is when

10  he's chanting inside the corridors as part of a crowd chant;

11  not something he started, but something he participated in.

12  And again, that's part of the basis of the offense conduct.

13          But we don't see him there being an agitator.  We

14  don't see him really understanding and grasping the

15  significance of the situation.  And that, I think, is

16  mitigating, not justifying an incarceral sentence like the

17  Government says.  Because a person who does have a cool head

18  in this kind of situation, who can stop and think before

19  ever being in a situation like that again -- not a riot, but

20  any kind of situation, is someone who the Court can put some

21  trust in to say are they going to be a person who, in the

22  future, are they going to act this way or are they going to

23  basically be able to stop and pause and think and reflect.

24          And what we see from Exhibit No. 6 that the

25  Government played where it's the selfie mode, he shows him

1    after that confrontation that Christian had up there where

2    he was -- again, not in view of Exhibit 5 where they're

3    right there with the officer who was, I agree with the

4    Government, maintaining not only the coolest head, but doing

5    an immense public service protecting people inside at risk

6    to himself and with confrontation to himself.  But Ben

7    wasn't right there.  Ben saw it from a distance.  Ben came

8    up, filmed.  When the smoke started coming out, he turned

9    and walked away.

10          And when we're looking at the totality of the

11   circumstances, there are other cases that have gone through

12   this courthouse, and there are other cases that have been in

13   front of other judges, where they had people who had been in

14   similar circumstances.  If we're looking at warranted versus

15   unwarranted disparities, the question is where does Ben fall

16   compared to some others who have gotten sentences consisting

17   of probation or supervised release.  And I'd cite the

18   Government's cases support more of a non-incarceral sentence

19   than an incarceral for Mr. Larocca, and here's why --

20          **THE COURT:**  Are you including my sentences in

21   those?

22          **MR. LEE:**  Well, Your Honor, I believe one of the

23   cases that was submitted to the Court was the Mazzocco case,

24   which is actually one that I really do want to talk about.

25   Because one of the key differences, I think, between

1    Mr. Larocca and Mr. Mazzocco was that there was destruction

2    of evidence in Mr. Mazzocco's case.  The Court found that he

3    deleted social media profiles, he tried to minimize things.

4    When confronted by law enforcement, things disappeared.  And

5    Mr. Larocca didn't do that, he turned over everything.  He

6    didn't delete accounts.  It wasn't that he was proud and

7    bragging about it.  All of his messages were private

8    messages directed at others.

9            He wasn't promoting it like in the case of Jessica

10   Bussell from Judge Hogan who received a 24-month sentence of

11   supervised release, who broadly on social media promoted the

12   violence of that day.  Mr. Larocca didn't.  And in fact, his

13   messages really show that he didn't get it.  He thought it

14   was Antifa, which is a common misconception -- all too

15   common misconception among parts of the country that don't

16   understand what actually happened that day, who was the

17   driving force behind the Capitol riot.

18           And Mr. Larocca has gone past his misconceptions.

19   He's gone past his misunderstandings and the confusion and

20   the noise and the fog of misinformation that occurred in the

21   days after.  He turned over evidence to the FBI.  He

22   cooperated with them fully.  He cooperated with them before

23   counsel.  He didn't destroy evidence.  He helped them

24   identify Christian Cortez, his friend.  And he was there

25   with his friend, and he's been charged with his friend.  And

1    he still owned up to the acts that he and his friend did.

2    He cooperated with authorities, and he gave them videos that

3    they didn't have, and he assisted with that investigation.

4           So when the Court's looking at the difference

5    between perhaps that sentencing, Mr. Mazzocco's sentencing,

6    and what I hope the Court might do for Mr. Larocca, is

7    understanding the difference between someone who destroys

8    evidence, minimizes things, downplays it, tries to protect

9    themselves, versus somebody who starts to own up, who starts

10   to get it, who cooperates with authorities.  What kind of

11   message do we send them?

12          When we're looking at the factors that apply under

13   3553(a), and we're looking about setting respect for the

14   law, I think we want to incentivize people who are in a

15   situation cooperating with the FBI not destroying evidence,

16   taking ownership of what they've done, taking

17   responsibility.  That is something that the factors look

18   towards about assisting the Government, about saving

19   resources, about entering into plea agreements and doing

20   things so that they take on responsibility for their

21   wrongdoing.  Don't burden the Government investigators,

22   assist the Government investigators in fact, as happened in

23   this case.

24          Ultimately, Your Honor, what it comes down to is I

25   think truly it's whether or not Mr. Larocca is remorseful

1    for this situation.  Because a lot of what the Government's

2    saying is punish him because he doesn't seem remorseful

3    enough; he seems cold on the video; he didn't write a letter

4    to the Court earlier in the case, and we're not sure he gets

5    it; we're not sure if his remorse is sincere.  Because we

6    shouldn't be putting people in jail unless we have to,

7    unless we have to, to protect society, unless we have to in

8    order to make sure the law's respected.

9          Again, I think if we put Mr. Larocca in jail in

10   this case, it sends a mixed message.  It says to somebody

11   who cooperated with the FBI from the get-go, who did all the

12   things he could do after the fact of making a very, very bad

13   decision.  The question is how is the Court going to treat

14   them, how is the Court going to reach out to them.

15   Ultimately, I think one of the things that's going to be

16   most important for the Court is what Mr. Larocca wants to

17   allocute about, and hearing his remorse.

18         Unless Your Honor has any questions for me, I'd

19   like to proceed to that phase of allocution.

20         **THE COURT:**  Thank you, Mr. Lee.

21         Mr. Larocca, I told you at your plea, and I'll

22   tell you again today, that -- and I've read your letter,

23   that at your sentencing you would have an opportunity, if

24   you wished, to speak.  You don't have to.  And if you decide

25   not to, I will not hold that against you.  But if you decide

1    you want to speak, I'll hear you now.

2            **THE DEFENDANT:**  Yes, Your Honor, I do.

3            **THE COURT:**  You can come up or you can stay there,

4    whatever you prefer.  Go ahead.

5            **THE DEFENDANT:**  Your Honor, everything that I said

6    in the notes, in the letter is true.  I meant it.  I also

7    want to apologize to all of law enforcement that was in the

8    Capitol, all of Congress, their staff and their family

9    members that have been affected by this.  I also am very

10   sorry that I was in the riot.  It was a very immature

11   reaction.  Everything that -- even shows in the messages

12   that it was immature.  I'm very sorry.  Now I completely

13   understand, soon after, the magnitude of it all.

14           **THE COURT:**  Let me ask you something, Mr. Larocca.

15   You told -- you said at some point that you believed there

16   were -- and I made this clear -- I make this clear in every

17   case.  I don't -- I am totally -- my sentence and my

18   assessment of the punishment here has nothing to do with

19   your political beliefs.  One of the great things about this

20   country is you're entitled to your political beliefs, you're

21   entitled to protest and march and yell whatever you want to

22   yell.  That has no bearing on my sentence in this case.

23           But you said that there were Antifa -- Antifa was

24   in there dressed as Trump supporters causing all kinds of

25   trouble, or words to that effect.  Do you still believe that

1    today?

2            THE DEFENDANT:  Absolutely not.

3            THE COURT:  All right.

4            THE DEFENDANT:  I'm sorry that I was in the riot.

5    Everything -- if I can take -- go back in time, of course I

6    would make sure I was never there.  The Capitol police

7    officers, all law enforcement, it made it much more

8    difficult for them getting everybody into the crowd, like to

9    control the crowd.  I'm sorry.

10           THE COURT:  That's okay.

11           THE DEFENDANT:  Overall, I want to be a better

12   citizen, a good citizen in this great country.  I want to be

13   a man of peace, not a man of violence.  That is all.

14           THE COURT:  All right.  Thank you, I appreciate

15   that.  Thank you, Mr. Lee.  After calculating the sentencing

16   guidelines and hearing the statements made by counsel and

17   Mr. Larocca, I have to now consider the relevant factors set

18   out by Congress in 18 U.S.C. section 3553(a) -- you may have

19   a seat, Mr. Larocca and Mr. Lee -- and ensure that I impose

20   a sentence sufficient, but not greater than necessary, to

21   comply with the purposes of sentencing.  I'm tasked with

22   this in every case, and in every case it's a difficult

23   balance to strike.  This case is no different.

24           The purposes include the need for the sentence

25   imposed to reflect the seriousness of the offense, to

1    promote respect for the law, and to provide for just

2    punishment; and should also deter criminal conduct, protect

3    the public from future crimes, and promote rehabilitation.

4    I also have to consider the nature and circumstances of the

5    offense; Mr. Larocca's history and characteristics; the

6    types of sentences available; the need to avoid unwarranted

7    sentence disparities; and the need to provide restitution.

8             I've considered all those factors in this case,

9    and I'll discuss some of them now.  They are factors I

10   discuss in every single case.  I've made it clear, and I

11   continue to make it clear, that I view each individual

12   defendant in every case -- and in these January 6th cases,

13   as individuals.  There's no presumption of jail time.

14   There's no sweeping generalized assessment.  I try and take

15   each case on its merits, and view the individual involved on

16   his own terms.  And I've done that in this case.

17            But it bears repeating, as I do every time, and as

18   Ms. Fifield did so eloquently, the January 6th, 2021 attack

19   on the Capitol was not just an attack on the Capitol and the

20   people inside, it was an attack on the foundations of our

21   democracy.  It was unprecedented.  I watch these videotapes

22   in almost every case, and every single time I am struck anew

23   at how horrifying the events of that day were.  And I'm

24   struck as someone who is watching -- has seen this kind of

25   footage multiple times, and was looking at footage on the

1   day; and as somebody, frankly, who has seen a lot of crime

2   scene footage.  I was a criminal defense lawyer, I was a

3   public defender for many years.  I'm not easily shocked, but

4   it's shocking.

5          And every single time I watch, I am struck and

6   horrified at how those outnumbered, outmanned law

7   enforcement officers, some of whom clearly weren't on the

8   job that long, may have been your age.  I had Officer Gonell

9   come in here and testify in another case, a felony case,

10  where a rioter hit him with a pole and broke his shield.

11  He's 32 years old, he's retired, he can't lift his arm above

12  his head.  He has post-traumatic stress disorder.  He has

13  nightmares.  He had to retire, he can't do the job he loves.

14  These police officers, these law enforcement officers were

15  trying to stay alive, they were trying to protect the people

16  inside.  They had inadequate backup and support, and they

17  were doing the best they could.  And I can't imagine how

18  terrified they must have been.  And it is to their

19  incredible credit that they showed the forbearance that they

20  did and they managed to keep calm, and eventually -- protect

21  the people inside and eventually allow the transfer of

22  power.  But it was close.  It was really much closer than --

23  every day we realize how close it was.  It was close because

24  of the mob.

25          And I've said it before, there's no mob without

1    Mr. Larocca or his other defendant or that crowd.  Everyone

2    standing around with their cameras on that -- in front of

3    those doors, every single one of those people contributed to

4    the mob that tried to intimidate those police officers; that

5    tried to gain entry into that building; that were trying to

6    stop the transfer of power and nullify a lawfully conducted

7    election.  So it bears repeating how serious this offense

8    was.  There were millions of dollars worth of property

9    damage, and Mr. Larocca was a willing participate in that

10   group.

11         He drove from Houston, Texas to Washington, D.C.

12   for the purpose of protesting.  And he didn't -- he said he

13   was too far from the Ellipse to really get -- to hear the

14   speech or participate, so he went straight to the Capitol.

15   You know, it is to Mr. Larocca's credit that he didn't

16   engage with law enforcement, that he didn't fight them.  But

17   what I see every time I look at these videos is a whole lot

18   of people who aren't there to protest, they're there to mix

19   it up.  People with poles, flagpoles, gas masks, camouflage

20   gear, helmets, sticks, those are not -- those people are not

21   there to peacefully protest.  People came to rumble.  They

22   wanted to fight, they wanted to engage.  That's not an

23   exercise of First Amendment rights, by any measure.

24         And yes, Mr. Larocca did not fight.  Yes, there's

25   no footage of him screaming at law enforcement.  He's

1  chanting USA with the crowd, as if he's cheering on a hockey

2  team, when what he's doing is cheering on a mob that was --

3  that wanted to assault members of Congress and stop the

4  transfer of power.  It's frankly so ironic that they're

5  chanting USA when the actions of that crowd are contrary to

6  every principle this country is supposed to stand for.

7       As Mr. Larocca approached the building, he could

8  see what was going on.  He could see the people scaling the

9  walls.  He could see the smoke.  He could hear the

10  incredible noise and the screams, and the sound of glass

11  splintering, and see exactly what was going on, see how

12  violent it was.  And he didn't turn away, he went on in.

13  That's the difference.  I mean, Mr. Lee spoke very

14  eloquently about his talking to law enforcement and his

15  pleading guilty and his remorse, and I'll get to that in a

16  minute.  But the fact is Mr. Larocca was charged with a

17  felony initially.

18       The mitigation -- the Government's consideration

19  of his mitigating acts are reflected in the fact that he's

20  allowed to plead to a misdemeanor in this case.  He was

21  charged, in addition to the misdemeanors, with a felony

22  carrying a maximum of 20 years in prison.  So he already got

23  a benefit in terms of what he's been allowed to plead to

24  considering what he was facing.

25       Mr. Larocca knew that the moment that he walked up

1    to the Capitol and saw the chaos and the violence and the

2    outrageous disdain for the rule of law what he was walking

3    into, and he chose to push forward.  He chose to breach the

4    Capitol doors, and he chose to do that, in part, to lend

5    support to the people who were inside.  Once inside, he

6    encountered law enforcement officers blocking the hallway to

7    prevent him and the other rioters from proceeding forward.

8    He's chanting "USA" and "Whose house?  Our house."  It

9    wasn't your house.  That house belongs to everyone in the

10   United States, and it should be treated with reverence and

11   respect.

12         When Mr. Larocca left the building, he joined with

13   a group of rioters at the north doors to the Capitol where a

14   group of officers were trying valiantly to prevent rioters

15   from entering the building.  The rioters threw projectiles

16   at the police.  They thrust a metal bike rack barricade

17   through the doors like a battering ram, screaming:  "Let us

18   in.  Let us in."  Mr. Larocca may not have been screaming,

19   he may not have been throwing anything, but he was right

20   there.  Mr. Cortez, who's his co-defendant -- I'm not

21   punishing Mr. Larocca for the actions of his co-defendant

22   clearly, and his actions show a lesser degree of

23   culpability.  But again, while he didn't do -- he didn't

24   throw anything or participate in any violence, he lent

25   support by his presence, which is not exactly small.

1          And the day after this is over, he writes -- he

2    takes to social media to celebrate what he had done.  In one

3    post he wrote:  "It was a demonstration of how we can take

4    it back."  Now, I actually disagree with the Government's

5    characterization that his casual demeanor is troubling.  I

6    mean, I think it is troubling he's there.  I agree with

7    Mr. Lee, he wasn't exultant, as I've seen so many people

8    cheering and screaming and triumphant at their behavior.

9    But he doesn't seem worried, he doesn't seem concerned about

10   what's going on around him.

11          And here's the thing that I see over and over, is

12   that what it appears happened is that the people who are

13   rioting that day, they go home and they're triumphant.  You

14   know, they're posting on social media:  We were there; we

15   took the Capitol; we did this, we did that.  And there's a

16   slow awareness over the next few days of uh-oh, we could get

17   in trouble for this; not everybody thinks we're heroes.

18   There's an awareness that this wasn't just some fun and, oh,

19   we went in there and we mixed it up and we took the Capitol,

20   aren't we great; that there are going to be consequences.

21   And that's when people start deleting social media posts,

22   and that's when people start cooperating with law

23   enforcement.

24          Now, you didn't delete your social media posts.

25   You gave the police your phone, you let them have total

1    access, and you sat down and talked to them.  That's to your

2    credit, and that's one of the reasons why you got a

3    misdemeanor plea in this case.  So you've already received

4    the benefit of some of that.

5           So I try and take people at face value when they

6    show remorse.  And Mr. Lee, you obviously have been paying

7    attention, because I continue to be amazed at the number of

8    sentencings I have, and I say every time I don't see the

9    remorse for the people who are inside that building and the

10   law enforcement officers.  And I see you have expressed it

11   and so has your client.  I can only think of maybe one other

12   case where I had that.  I see a whole lot of remorse for

13   what has happened to them, to the defendants.  They've lost

14   their jobs, they're social pariahs, they've lost

15   opportunities.  But I don't see a lot whole of remorse for

16   what the people who were inside that building were

17   suffering.

18          So I hope it's genuine, I do.  There have been

19   other judges who have heard remorse in their courtrooms, and

20   then people go outside and say other things.  That hasn't

21   happened.  I hope you've learned your lesson.  I don't have

22   any reason to believe you don't.  Your family's here, I

23   think you've learned your lesson, and I hope you have.  But

24   to say it was a demonstration of how we can take it back

25   speaks volumes to me, because I'm wondering who were going

1    to take it from.

2            This was a lawfully conducted election.  There

3    have been other elections that people have felt were not

4    fair, and where one candidate has not been -- there may have

5    been votes that weren't -- there have been contested

6    elections in our country's history.  The people who were on

7    the losing side went on about their business and their

8    lives, and went to the polls the next time.  That's how it

9    works here.  When you lose, you don't get to cry foul just

10   because you lost, and that's what happened.  The notion that

11   if we don't get what we want, we'll take it, is what is so

12   troubling about the actions of that day.  I worry -- I

13   continue to worry that others will be emboldened to take the

14   law into their own hands again.  The political rhetoric, the

15   online rhetoric, the messages that we in the Judiciary and

16   law enforcement are getting about violent -- with violent

17   language and threatening language is very concerning.  Our

18   institutions of democracy continue to be vulnerable and

19   continue to be at risk.

20           Turning to your characteristics as an offender.

21   You're a young person, you're 28 years old.  You made a

22   mistake.  You've taken responsibility for it.  You're

23   employed.  And I have to tell you, Mr. Larocca, you are not

24   the typical person who comes in front of me.  You've had --

25   you know, you suffered a little as a child from your moving

1       around a lot and the loss of your father.  But you've

2       basically had a good life.  You've got a college degree.

3       You have a good job.  You have a job that's going to be

4       available to you.

5               I see people in front of me all the time who don't

6       have any of the advantages you've had in your life, looking

7       at a lot more time than you're looking at, and they didn't

8       have a chance.  Their parents were on drugs, their parents

9       in jail, they had terrible schooling, they had the -- you

10      know, the deck was stacked against them.  Not so in your

11      case.  It's to your -- it means that you'll probably have a

12      better chance at rehabilitating yourself and being a

13      productive citizen.  But it means, also, that you have less

14      of an excuse for breaking the law.  You knew better; you

15      should have known better.

16              I've already gone over the type of sentences

17      available.  I could give you up to a year.  Your lawyer's

18      asking for probation.  The Government's asking for three

19      months.  And I can give you supervised release as well as a

20      fine.  I'm not going to go over -- I've already been over

21      the sentences.  Your lawyer and the Government have talked

22      about the need to avoid unwarranted sentence disparity, and

23      that's always a factor we take into consideration.  The

24      cases of January 6th are unique, because something like that

25      has never happened.  But I do look at not only what my

1  colleagues are doing as well, but I also look at the cases

2  that I've sentenced people to, because every judge has

3  different factors that they take into consideration.  And I

4  do take into consideration the sentences that I've given to

5  other individuals and from other judges.

6         In the case of United States vs. Sidorski, Judge

7  Jackson imposed a hundred day term of incarceration for

8  conduct that was comparable to yours; where the defendant

9  entered the Capitol directly from behind the initial wave of

10  rioters, documented the events on his cellphone, and didn't

11  commit any acts of destruction.  But he did grab a police

12  officer's arm, which is something you did not do.   In

13  Bromley, United States vs. Bromley, the defendant berated

14  Capitol police officers, then watched as his cousin

15  assaulted one of them.  And he encouraged his cousin to help

16  him breach the unguarded doors.  That's not quite what you

17  did here, you did not assault anyone or destroy any

18  property.  But Mr. Bromley was sentenced to 90 days of

19  incarceration.

20         So I've considered all these factors, and the

21  factors that I -- one of the factors that I consider

22  extremely important is deterrence.  It has to be made clear

23  that there are consequences for taking part in that violent

24  riot on January 6th.  Anyone who is seeing what was going

25  on -- not anyone, Mr. Larocca seeing what was going on,

1    seeing the violence, the smoke, the outnumbered officers,

2    the screaming at law enforcement -- seeing all of that, who

3    nevertheless went inside, went into the corridor and then is

4    in a group -- in a crowd screaming at officers who are

5    trying to secure the doors.

6         Ms. Fifield is right, those officers' efforts --

7    there are only so many officers, and they could only be so

8    many places at one time.  They had to deal with a crowd in

9    which Mr. Larocca was present instead of trying to secure

10   the people inside and trying to get the door shut so they

11   could not come in.  I've seen footage where those doors were

12   broken again.  So there has to be a consequence for that,

13   and the consequence has to deter future conduct.

14        So having considered all of the factors here, I

15   actually do not believe -- I believe the sentence that I

16   gave Mr. Mazzocco in an earlier case is similar to the

17   sentence that Mr. Larocca should receive.  So if you could

18   stand, Mr. Larocca and Mr. Lee.

19        Based on my consideration of all of the 3553(a)

20   factors, it is the judgment of the Court that you, Benjamin

21   Larocca, are hereby committed to the custody of the Bureau

22   of Prisons for a term of 60 days, two months, for disorderly

23   and disruptive conduct in a restricted building or grounds

24   in violation of 18 U.S.C. section 1752(a)(2).  You are

25   further sentenced to a year, 12 months, of supervised

1    release.  You are ordered to pay a fine of $2,000.  You have

2    a job, you have the resources, and I believe a fine here

3    reflects the seriousness of this offense.  The Court has

4    determined that you do not have the ability to pay interest,

5    and therefore I waive any interest on a fine or penalty that

6    accrues.  You are required to pay $500 in restitution, as

7    you agreed to in your plea agreement.  You must pay a $25

8    special assessment.  And I also will require you to do 60

9    hours of community service.

10           The special assessment is payable to the Clerk of

11   the Court for the U.S. District Court of the District of

12   Columbia who shall forward the payments to the Architect of

13   the Capitol.  Within 30 days of any change of address, you

14   shall notify of the Clerk of the Court of the change until

15   such time as the financial obligation is paid in full.

16           Mr. Lee, do you have any recommendations for

17   Mr. Larocca's facility?

18           **MR. LEE:**  Your Honor, we would request that he be

19   allowed to serve his time in Texas in local confinement, if

20   it's agreeable to probation.

21           **THE COURT:**  In where?

22           **MR. LEE:**  In local confinement, if it's agreeable

23   to probation.

24           **THE COURT:**  I don't have any objection to that.  I

25   mean, I assume for these sort of short term sentences -- but

1    as you know, or you may not know, I have no control over the

2    Bureau of Prisons.

3         **MR. LEE:**  That's correct, Your Honor.

4         **THE COURT:**  They do what they want.  But if that's

5    an option, I have no objection to that.

6         **MR. LEE:**  Would the Court be agreeable to allow

7    him to make arrangements with probation in Texas for a date

8    to surrender?

9         **THE COURT:**  Oh, yes, I'll get to that.  I'll get

10   to that.  Within 72 hours of release from custody, you shall

11   report in person to the probation office in the district to

12   where you're released.  While on supervised release, you

13   shall submit to DNA collection.  You shall not possess a

14   firearm or other dangerous weapon.  You shall not use or

15   possess an illegal controlled substance.  And you shall not

16   commit another federal, state or local crime.  You shall

17   also abide by the general conditions of supervision adopted

18   by the U.S. Probation Office, as well as the following

19   condition:  You must complete 60 hours of community service,

20   which will benefit not only the community, but you as you

21   acquire additional experience and broaden your community.

22   The probation office will supervise your participation in

23   the program by approving the program.

24        I've had people -- I stopped imposing community

25   service for a while, because I had a defendant do this

1    online political program.  I don't want that, that's not

2    what I'm talking about.  You must provide written

3    verification of completed hours to the probation office.

4    The probation office shall release the presentence

5    investigation report to all appropriate agencies in order to

6    execute the sentence of the Court.

7            Now, I told you when you came into this case that

8    your conduct and your compliance with your pretrial release

9    conditions would be important.  And I told you again at your

10   plea that they were important, that's why I allowed you to

11   remain on release.  Again, here is a time when they're

12   important and they have consequences, because I am going to

13   allow you to voluntarily surrender.  You must contact

14   probation, and they will tell you when you're due to report

15   and where you should report.  And that is because you have

16   been in compliance, and you have shown respect for the Court

17   by complying with your pretrial release conditions.

18           If you violate any of your conditions of release

19   while on release pending surrender, an arrest warrant may

20   issue and you may be detained for failing to comply with the

21   conditions of your release.  That's if you don't show up

22   when you're supposed to.  Such a violation is a separate

23   offense for which you could be sentenced to a fine or

24   imprisonment of up to 10 years or both.

25           Pursuant to 18 U.S.C. section 3742, you have a

1      right to appeal the sentence that I've imposed, subject to

2      certain rights of appeal that you waived as part of your

3      plea agreement.  If you choose to appeal, you must file an

4      appeal within 14 days after the Court enters judgment.  If

5      you're unable to afford the cost of an appeal, you may

6      request permission from the Court to file an appeal without

7      cost to you.

8              As part of the plea agreement, the Government

9      pledged to move to dismiss the remaining counts of the

10     indictment against Mr. Larocca.  Government?

11             **MS. FIFIELD:**  The Government makes that motion to

12     dismiss the remaining counts in the indictment as to

13     Benjamin Larocca.

14             **THE COURT:**  The motion is granted, the remaining

15     counts of the indictment are dismissed.

16             Mr. Larocca, I'm going to take you at your word

17     that you have remorse and that you're a changed person.  And

18     I really hope you are.  Because if you aren't, I mean, it

19     might be annoying to me, but it's not going to do you any

20     good.  You're a young person, you have a lot to contribute.

21     You have a long, long life ahead of you.  As I say this in

22     almost every case, a very wise person named Bryan Stevenson

23     once said that you are not the worst thing you've ever done,

24     you're far more than that.  You are a son, you are loved,

25     you're an employee, you're a friend, and there's a lot about

1　you that is positive.  And I hope you -- how you demonstrate

2　character is not the mistake you made, it's what you do

3　after the mistake.  It's how you pick yourself up and carry

4　on and live your life.  You have an opportunity to show that

5　this was a mistake, but it's not who you are.  And I wish

6　you good luck with that, sir.

7　　　　　　　MS. LANDON:  Your Honor?

8　　　　　　　THE COURT:  Yes, Ms. Landon.

9　　　　　　　MS. LANDON:  I don't know if the Court addressed

10　the transfer of jurisdiction or if the Court wishes to keep

11　jurisdiction.

12　　　　　　　THE COURT:  Oh, are you requesting a transfer of

13　jurisdiction for supervised release to Texas, Mr. Lee?

14　　　　　　　MR. LEE:  Yes, Your Honor, I think that would be

15　most appropriate.

16　　　　　　　THE COURT:  Do you have any objection,

17　Ms. Fifield?

18　　　　　　　MS. FIFIELD:  No objection.

19　　　　　　　THE COURT:  Then I will allow transfer of

20　jurisdiction for the supervised release term to Texas.

21　　　　　　　MS. LANDON:  Thank you, Your Honor.

22　　　　　　　THE COURT:  Good luck, Mr. Larocca.  Those of you

23　here for the trial matter, as you can see, my law clerk has

24　not had a minute -- I haven't, I can go a little longer like

25　a camel.  But we're going to need to take a short break and

1   then come back.   Thank you.

2          (Proceedings adjourned at 2:13 p.m.)

1                      **C E R T I F I C A T E**

2

3               I, **Jeff M. Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9        August 22, 2022                    _____

10            **DATE**                          **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$100,000 [2]   13/23
21/22
$2,000 [4]   21/23
21/24 22/22 60/1
$20,000 [1]   21/23
$25 [3]   14/1 22/2
60/7
$500 [5]   14/6 22/5
22/23 24/22 60/6
$9,500 [1]   21/24

**1**

10 [3]   1/6 19/12
62/24
10 feet [1]   31/19
100 [1]   1/17
10521 [1]   1/17
11 [3]   5/25 12/22
16/4
12 [1]   59/25
12:38 [1]   1/7
13 [1]   40/11
14 [1]   63/4
14th [1]   9/19
15 [2]   26/19 40/7
1752 [15]   4/8 4/10
4/14 4/18 4/20 4/24
5/8 5/15 7/8 12/11
15/16 16/3 19/9
21/9 59/24
18 [17]   4/7 4/10
4/13 4/17 4/20 4/23
5/8 5/14 7/7 15/16
16/3 19/9 21/9 22/3
48/18 59/24 62/25
1:21-cr-317-2 [1]
1/4

**2**

20 [1]   52/22
20001 [1]   1/25
2021 [3]   19/8 27/11
49/18
2022 [3]   1/6 9/20
17/8
20530 [1]   1/15
20th [1]   38/4
21 [1]   32/25
21-317-2 [1]   3/3
22030 [1]   1/18
24 [3]   2/4 2/5 2/6
24-month [1]   44/10
28 [1]   56/21
2:00 [1]   40/18
2:00 and [1]   25/15
2:13 [1]   65/2
2:25 p.m [1]   25/15
2:53 p.m [1]   26/11
2A2.4 [1]   19/10

**3**

30 [4]   5/1 32/21
32/23 60/13
32 [1]   50/11
333 [1]   1/24
3553 [6]   21/4 22/22
36/4 45/13 48/18
59/19

3663 [1]   22/3
3742 [1]   62/25
3:06 p.m [2]   26/18
41/6
3rd [2]   17/8 18/23

**4**

41 [1]   5/5
4700-C [1]   1/24
48 [1]   8/7

**5**

5 and [1]   23/14
555 [1]   1/14

**6**

6 are [1]   29/14
6 into [1]   23/14
60 [7]   22/12 22/16
22/22 24/22 59/22
60/8 61/19
6th [8]   25/4 25/11
27/11 41/7 49/12
49/18 57/24 58/24

**7**

72 [1]   61/10

**8**

8A [1]   29/24
8B [2]   30/14 30/21
8C [1]   30/24
8th [1]   4/21

**9**

90 [1]   58/18
94 [1]   21/24

**A**

abbreviated [1]
16/4
abide [1]   61/17
ability [2]   8/8
60/4
able [4]   31/17 37/9
40/15 42/23
above [3]   27/2
50/11 66/5
above-entitled [1]
66/5
Absolutely [1]   48/2
accept [5]   8/19
10/9 12/20 15/25
18/25
acceptance [1]
19/13
accepted [1]   37/18
accepting [1]   5/2
access [2]   38/10
55/1
Accordingly [1]
19/14
account [2]   14/13
22/21
accounts [2]   38/7
44/6
accrues [1]   60/6
accurately [3]
11/10 19/20 22/6
achieve [1]   36/3

achieved [1]   25/16
acquire [1]   61/21
across [1]   39/8
act [1]   42/22
acted [1]   40/4
acting [1]   15/22
action [2]   1/4 3/2
actions [4]   52/5
53/21 53/22 56/12
actor [1]   41/14
acts [4]   42/4 45/1
52/19 58/11
actual [1]   15/23
actually [7]   29/12
41/21 42/5 43/24
44/16 54/4 59/15
added [1]   29/9
addiction [1]   8/12
addition [3]   33/8
34/25 52/21
additional [2]
14/16 61/21
Additionally [1]
12/2
address [4]   23/3
36/8 40/5 60/13
addressed [1]   64/9
adjourned [1]   65/2
adjudged [3]   5/3
5/6 16/1
admitted [5]   2/4
2/5 2/6 24/13 24/14
adopted [1]   61/17
advantages [1]   57/6
advisory [1]   19/6
affect [1]   8/7
affected [1]   47/9
afford [1]   63/5
afternoon [6]   3/8
3/23 17/5 23/5 23/7
31/9
afterwards [3]
37/10 38/14 39/16
again [20]   5/8 6/18
6/19 8/1 22/23 34/7
36/21 38/25 39/10
39/12 42/12 42/19
43/2 46/9 46/22
53/23 56/14 59/12
62/9 62/11
against [7]   8/18
8/22 11/13 32/13
46/25 57/10 63/10
age [1]   50/8
agencies [1]   62/5
aggravated [1]
41/23
aggravating [3]
32/4 35/2 40/9
agitating [1]   41/22
agitator [1]   42/13
agree [2]   43/3 54/6
agreeable [3]   60/20
60/22 61/6
agreed [5]   12/12
12/15 14/5 24/23
60/7
agreement [33]   4/1
4/3 4/11 4/22 5/4
6/1 9/11 9/13 9/15

9/19 10/25 11/3
11/16 11/17 11/19
11/22 11/24 12/3
12/17 12/21 13/4
13/6 14/4 14/10
15/3 16/19 16/20
20/9 22/4 24/24
60/7 63/3 63/8
agreement's [1]
4/18
agreements [1]
45/19
agrees [2]   4/11
5/19
ahead [4]   23/10
40/22 47/4 63/21
al [1]   1/6
alcohol [1]   8/6
alerting [1]   4/1
alive [1]   50/15
allocute [1]   46/17
allocution [4]
23/13 24/8 24/17
46/19
allow [6]   8/3 17/23
50/21 61/6 62/13
64/19
allowed [5]   25/17
52/20 52/23 60/19
62/10
almost [2]   49/22
63/22
along [1]   16/23
altercation [1]
33/8
always [1]   57/23
amazed [1]   55/7
amend [2]   6/1 7/5
amended [10]   7/24
8/18 9/12 9/15
10/25 11/3 11/16
11/19 16/4 16/20
amending [2]   7/8
9/11
Amendment [1]   51/23
amends [1]   38/13
AMERICA [2]   1/3 3/3
Ami [1]   3/6
among [1]   44/15
amount [3]   14/6
22/4 35/10
anew [1]   49/22
annotations [2]
9/20 11/23
announced [1]   5/2
annoying [1]   63/19
Antifa [5]   37/16
37/16 44/14 47/23
47/23
apologize [3]   20/19
37/5 47/7
apology [1]   38/18
appeal [6]   63/1
63/2 63/3 63/4 63/5
63/6
appear [2]   4/4 28/5
APPEARANCES [1]
1/12
appearing [1]   3/5
appears [3]   30/8

**A**

appears... [2]
30/19 54/12
applaud [1]   35/6
applicable [4]
19/22 20/13 21/7
21/17
applies [2]   10/19
19/7
apply [4]   13/8
13/12 14/9 45/12
appreciate [1]
48/14
appreciates [1]
17/6
approached [2]
25/12 52/7
appropriate [3]
35/25 62/5 64/15
approving [1]   61/23
approximately [5]
25/14 26/11 26/18
26/19 32/16
April [3]   4/21 6/19
15/10
April 8th [1]   4/21
Architect [2]   14/5
60/12
area [1]   41/2
argue [1]   24/9
argued [1]   32/3
arguments [2]   20/16
20/24
arm [2]   50/11 58/12
around [10]   28/11
31/18 31/25 32/2
34/3 34/8 38/21
51/2 54/10 57/1
arrangements [1]
61/7
arrest [3]   14/22
28/19 62/19
ascended [1]   26/16
aside [1]   11/23
aspects [1]   31/15
assault [3]   33/17
52/3 58/17
assaulted [1]   58/15
assessment [6]   14/1
22/2 47/18 49/14
60/8 60/10
assist [1]   45/22
assisted [1]   45/3
assisting [2]   31/8
45/18
assume [1]   60/25
attack [3]   49/18
49/19 49/20
attempt [1]   33/19
attention [4]   33/21
34/20 41/5 55/7
attitude [2]   34/12
34/23
Attorney's [3]
12/24 13/5 31/8
attributes [1]
26/22
August [3]   1/6 17/8
18/23

August 3rd [2]   17/8
18/23
authorities [2]
45/2 45/10
authorized [1]
12/21
available [5]   22/21
29/25 49/6 57/4
57/17
Avenue [1]   1/24
avoid [2]   49/6
57/22
aware [8]   10/10
10/10 13/6 28/6
29/4 29/5 32/10
33/10
awareness [2]   54/16
54/18
away [7]   30/20 31/3
33/21 39/23 39/25
43/9 52/12

**B**

back [11]   17/4
28/22 28/23 30/19
31/2 31/19 32/7
48/5 54/4 55/24
65/1
background [4]   26/1
26/8 29/9 32/14
backup [1]   50/16
bad [2]   23/21 46/12
balance [1]   48/23
Bankruptcy [1]   1/23
barricade [2]   32/12
53/16
base [1]   19/12
based [6]   9/8 20/2
22/24 30/9 31/20
59/19
basically [2]   42/23
57/2
basis [3]   12/2
15/23 42/12
battering [2]   32/13
53/17
beanie [1]   30/9
bear [1]   22/18
bearing [1]   47/22
bears [2]   49/17
51/7
begin [2]   17/6
30/16
beginning [1]   25/4
behalf [1]   3/11
behavior [1]   54/8
behind [3]   38/19
44/17 58/9
belief [1]   37/15
beliefs [2]   47/19
47/20
belongs [1]   53/9
below [1]   10/7
Ben [4]   43/6 43/7
43/7 43/15
benefit [3]   52/23
55/4 61/20
benign [1]   34/10
BENJAMIN [7]   1/6
3/3 5/6 15/18 16/1

59/20 63/13
berated [1]   58/13
best [3]   33/23 37/1
50/17
besties [1]   29/10
better [4]   48/11
57/12 57/14 57/15
bike [2]   32/12
53/16
bit [3]   33/18 40/19
40/21
black [1]   17/4
blocking [1]   53/6
blue [3]   30/2 30/9
33/16
blush [1]   34/10
both [6]   5/18 5/24
6/2 9/23 17/3 62/24
Bradley [2]   6/10
40/17
bragging [1]   44/7
breach [2]   53/3
58/16
breaches [1]   25/17
break [2]   40/7
64/25
breaker [1]   39/2
breaking [1]   57/14
BRET [4]   1/16 1/17
3/5 10/7
brief [1]   24/25
briefly [4]   20/20
25/3 28/9 33/2
broaden [1]   61/21
broadly [1]   44/11
broke [1]   50/10
broken [1]   59/12
Bromley [3]   58/13
58/13 58/18
Brumidi [8]   26/23
26/25 27/2 27/6
27/16 28/10 34/21
40/11
Bryan [1]   63/22
building [25]   4/7
4/9 4/13 5/7 5/14
7/11 9/22 15/15
16/2 21/8 25/19
26/11 26/20 34/2
34/5 34/15 39/25
41/10 51/5 52/7
53/12 53/15 55/9
55/16 59/23
burden [2]   38/23
45/21
Bureau [2]   59/21
61/2
business [1]   56/7
Bussell [1]   44/10

**C**

calculated [2]
19/20 21/23
calculates [1]   20/4
calculating [1]
48/15
calculation [5]
19/6 19/7 19/16
20/6 20/9
calculations [1]

22/15
called [1]   11/6
calm [4]   28/6 41/19
41/19 50/20
calmness [1]   42/5
came [5]   38/20
39/18 43/7 51/21
62/7
camel [1]   64/25
camera [4]   31/25
32/1 34/3 34/8
cameras [1]   51/2
camouflage [1]
51/19
can [38]   3/10 3/15
3/16 3/17 3/20 24/6
24/7 27/12 28/9
28/11 30/17 31/2
31/5 31/24 32/1
32/11 32/13 35/12
36/13 36/21 36/21
36/24 37/19 39/13
40/17 41/9 42/8
42/18 42/20 47/3
47/3 48/5 54/3
55/11 55/24 57/19
64/23 64/24
candidate [1]   56/4
cap [2]   30/2 31/3
capable [2]   9/10
15/19
Capitol [48]   14/6
25/13 25/18 25/25
26/11 26/20 27/5
27/8 27/22 27/24
28/1 28/2 28/3 28/7
28/7 28/14 28/17
28/20 28/22 28/23
28/24 30/12 33/13
33/15 33/25 34/4
34/6 34/17 34/18
34/22 35/14 40/14
41/2 41/12 44/17
47/8 48/6 49/19
49/19 51/14 53/1
53/4 53/13 54/15
54/19 58/9 58/14
60/13
caption [2]   27/16
29/10
capture [1]   28/10
carries [1]   21/10
carry [1]   64/3
carrying [1]   52/22
case [41]   8/15 8/23
9/1 11/3 11/10
13/15 14/11 17/25
19/7 24/8 32/4
33/13 37/20 38/1
43/23 44/2 44/9
45/23 46/4 46/10
47/17 47/22 48/22
48/22 48/23 49/8
49/10 49/12 49/15
49/16 49/22 50/9
50/9 52/20 55/3
55/12 57/11 58/6
59/16 62/7 63/22
cases [12]   25/4
34/25 35/14 35/19

**C**

cases... **[8]**   38/6
43/11 43/12 43/18
43/23 49/12 57/24
58/1
casual **[6]**   34/1
34/1 34/2 34/5 34/9
54/5
casually **[1]**   34/23
category **[4]**   19/23
20/2 20/3 20/7
caught **[1]**   3/24
causing **[1]**   47/24
caution **[1]**   35/18
CCTV **[1]**   40/14
celebrate **[1]**   54/2
cell **[1]**   31/12
cellphone **[1]**   58/10
certain **[1]**   63/2
certainly **[4]**   24/6
24/9 33/5 41/16
certify **[1]**   66/4
chamber **[1]**   27/2
chance **[2]**   57/8
57/12
change **[7]**   4/2 5/25
7/21 10/11 15/11
60/13 60/14
changed **[1]**   63/17
changing **[1]**   9/20
chant **[1]**   42/10
chanted **[1]**   27/6
chanting **[4]**   42/10
52/1 52/5 53/8
chants **[1]**   28/4
chaos **[3]**   32/3
41/20 53/1
character **[1]**   64/2
characteristics **[2]**
49/5 56/20
characterization **[1]**
54/5
characterize **[1]**
25/22
charge **[4]**   4/17
4/23 21/7 35/25
charged **[4]**   13/1
44/25 52/16 52/21
charges **[9]**   4/5 4/8
6/21 8/18 8/22 8/25
11/12 15/20 37/23
charging **[3]**   4/12
7/7 15/14
check **[1]**   40/23
cheering **[3]**   52/1
52/2 54/8
chemical **[1]**   29/8
child **[1]**   56/25
choose **[1]**   63/3
chooses **[1]**   35/9
chose **[3]**   53/3 53/3
53/4
Christian **[4]**   23/20
25/12 43/1 44/24
CHUTKAN **[1]**   1/10
circle **[3]**   30/18
30/21 31/1
circled **[1]**   30/1
circumstances **[7]**

19/2 22/24 24/10
33/5 43/11 43/14
49/4
citation **[1]**   5/9
cite **[1]**   43/17
citizen **[3]**   48/12
48/12 57/13
clanging **[1]**   32/13
clarification **[1]**
24/16
clarify **[2]**   23/22
24/8
class **[3]**   14/2
21/10 24/17
clear **[6]**   32/4
47/16 47/16 49/10
49/11 58/22
clearly **[4]**   29/7
36/8 50/7 53/22
clerk **[5]**   3/24 14/1
60/10 60/14 64/23
client **[1]**   55/11
climbing **[3]**   26/1
26/8 27/21
clip **[3]**   27/22
40/25 41/1
clips **[2]**   27/13
27/15
close **[7]**   23/20
26/25 30/17 33/19
50/22 50/23 50/23
closer **[5]**   32/5
32/8 36/14 36/25
50/22
clothing **[1]**   31/24
co **[2]**   53/20 53/21
co-defendant **[2]**
53/20 53/21
code **[3]**   5/8 7/8
7/10
coerced **[1]**   14/17
cold **[2]**   41/19 46/3
colleagues **[3]**   25/6
28/1 58/1
collection **[1]**
61/13
college **[1]**   57/2
colloquy **[4]**   4/21
5/20 8/1 15/11
COLUMBIA **[1]**   1/1
12/24 13/2 13/3
13/5 60/12
comfortable **[2]**
3/18 3/21
coming **[5]**   3/10
37/14 39/8 39/23
43/8
commented **[1]**   29/11
commit **[3]**   34/22
58/11 61/16
committed **[2]**   13/3
59/21
common **[2]**   44/14
44/15
community **[7]**   21/19
24/22 60/9 61/19
61/20 61/21 61/24
comparable **[1]**   58/8
compared **[3]**   41/22
42/7 43/16

competence **[1]**   9/4
competent **[3]**   7/22
9/10 15/19
complete **[1]**   61/19
completed **[1]**   62/3
completely **[2]**   8/14
47/12
compliance **[2]**   62/8
62/16
comply **[2]**   48/21
62/20
complying **[1]**   62/17
composite **[1]**   27/13
concerned **[1]**   54/9
concerning **[2]**   32/3
56/17
conclude **[1]**   35/22
concludes **[1]**   16/4
condition **[2]**   21/18
61/19
conditions **[5]**
61/17 62/9 62/17
62/18 62/21
conduct **[19]**   4/9
5/13 7/11 9/22 11/8
11/21 12/25 15/15
16/2 21/8 25/1 35/5
41/11 42/12 49/2
58/8 59/13 59/23
62/8
conducted **[2]**   51/6
56/2
confinement **[4]**
21/19 21/20 60/19
60/22
conflated **[1]**   4/4
confrontation **[7]**
28/25 29/3 29/6
29/22 30/12 43/1
43/6
confronted **[1]**   44/4
confusion **[2]**   12/16
44/19
Congress **[3]**   47/8
48/18 52/3
Congress' **[1]**   27/1
connection **[2]**   15/2
18/5
consequence **[2]**
59/12 59/13
consequences **[5]**
6/23 15/21 54/20
58/23 62/12
consider **[7]**   14/10
14/12 20/14 21/5
48/17 49/4 58/21
consideration **[5]**
52/18 57/23 58/3
58/4 59/19
considerations **[1]**
40/6
considered **[3]**   49/8
58/20 59/14
considering **[1]**
52/24
consistent **[1]**   20/9
consisting **[1]**
43/16
Constitution **[1]**
1/24

contact **[2]**   14/22
62/13
contacted **[3]**   38/2
38/4 38/8
containing **[1]**
15/24
contemplate **[1]**
5/12
contemplation **[1]**
12/4
contested **[1]**   56/5
context **[3]**   39/11
41/14 41/15
continue **[5]**   49/11
55/7 56/13 56/18
56/19
contrary **[1]**   52/5
contribute **[1]**
63/20
contributed **[1]**
51/3
contrition **[1]**   35/9
control **[2]**   48/9
61/1
controlled **[1]**
61/15
conviction **[1]**   14/2
convictions **[1]**
19/24
cool **[2]**   33/18
42/17
cooler **[1]**   41/25
coolest **[1]**   43/4
cooperate **[1]**   38/11
cooperated **[4]**
44/22 44/22 45/2
46/11
cooperates **[1]**
45/10
cooperating **[3]**
39/15 45/15 54/22
copy **[3]**   8/21 9/15
9/18
corner **[1]**   29/18
corrected **[3]**   12/7
17/14 18/21
corrections **[1]**
18/23
correctly **[1]**   25/15
correspond **[1]**   5/9
corresponds **[2]**
4/19 7/9
corridor **[1]**   59/3
corridors **[10]**
26/23 26/25 27/3
27/6 27/16 28/2
28/11 34/21 40/11
42/10
Cortez **[26]**   23/20
25/12 25/20 25/24
26/7 26/9 26/14
26/19 27/4 27/24
28/9 28/14 28/25
29/6 29/9 30/6 30/7
30/11 30/16 30/16
30/24 32/6 33/20
34/20 44/24 53/20
Cortez's **[1]**   33/8
cost **[2]**   63/5 63/7
counsel **[14]**   3/13

**C**

**counsel... [13]**
4/22 5/4 5/11 5/24
10/2 16/19 22/6
24/1 37/23 38/5
38/18 44/23 48/16
**count [13]**   4/4 4/5
4/5 4/8 4/12 4/16
4/16 4/16 4/19 4/20
5/13 7/7 15/13
**counter [2]**   32/19
33/1
**country [4]**   44/15
47/20 48/12 52/6
**country's [1]**   56/6
**counts [4]**   5/18
63/9 63/12 63/15
**couple [2]**   7/20
30/14
**course [2]**   37/22
48/5
**court [54]**   1/1 1/22
1/23 3/16 5/25 6/14
14/1 15/3 18/24
21/11 23/3 23/8
23/11 23/17 24/4
24/17 24/25 25/6
29/14 29/15 29/21
30/4 33/4 35/4 35/8
35/17 35/18 35/21
36/8 36/22 37/19
40/1 40/3 42/20
43/23 44/2 45/6
46/4 46/13 46/14
46/16 59/20 60/3
60/11 60/11 60/14
61/6 62/6 62/16
63/4 63/6 64/9
64/10 66/3
**Court's [5]**   23/10
25/1 27/17 41/5
45/4
**courthouse [1]**
43/12
**courtroom [3]**   17/1
17/3 35/20
**courtrooms [1]**
55/19
**courts [2]**   1/23
39/14
**cousin [2]**   58/14
58/15
**cover [1]**   26/21
**covered [1]**   34/8
**COVID [1]**   3/8
**cr [1]**   1/4
**credit [4]**   35/16
50/19 51/15 55/2
**crediting [1]**   35/19
**crime [2]**   50/1
61/16
**crimes [1]**   49/3
**criminal [17]**   1/4
3/2 6/21 8/22 11/8
12/22 13/1 19/22
19/25 20/1 20/2
20/3 20/6 41/11
41/13 49/2 50/2
**criminally [1]**

12/23
**crowd [13]**   28/21
30/15 30/20 31/4
32/10 42/10 48/8
48/9 51/1 52/1 52/5
59/4 59/8
**cry [1]**   56/9
**culpability [1]**
53/23
**cursing [1]**   42/8
**curve [1]**   37/14
**custody [2]**   59/21
61/10

**D**

**D.C [2]**   25/10 51/11
**damage [1]**   51/9
**dangerous [1]**   61/14
**darkest [1]**   42/1
**date [2]**   61/7 66/10
**dated [1]**   9/19
**day [20]**   24/11
26/15 38/21 39/6
39/9 39/24 40/8
41/2 41/12 41/14
41/25 44/12 44/16
49/23 50/1 50/23
54/1 54/13 56/12
58/7
**days [8]**   38/14 42/1
44/21 54/16 58/18
59/22 60/13 63/4
**DC [4]**   1/5 1/14
1/15 1/25
**deal [1]**   59/8
**decide [2]**   46/24
46/25
**decision [4]**   7/24
15/19 22/18 46/13
**deck [1]**   57/10
**decreased [1]**   19/14
**defendant [11]**   1/16
10/1 19/13 36/1
49/12 51/1 53/20
53/21 58/8 58/13
61/25
**defendant's [1]**   9/4
**defendants [2]**   1/7
55/13
**defender [1]**   50/3
**defense [8]**   4/22
5/4 5/11 5/24 9/7
10/2 41/1 50/2
**degree [3]**   40/10
53/22 57/2
**delete [4]**   38/5
39/17 44/6 54/24
**deleted [1]**   44/3
**deleting [1]**   54/21
**demeanor [1]**   54/5
**democracy [2]**   49/21
56/18
**demonstrate [1]**
64/1
**demonstrated [1]**
19/13
**demonstration [2]**
54/3 55/24
**department's [1]**
18/3

**departure [4]**   20/16
20/17 20/23 20/24
**departures [2]**
20/14 20/21
**depict [1]**   24/10
**depth [1]**   33/10
**describe [2]**   11/10
33/23
**described [4]**   4/22
5/5 12/5 14/9
**describes [1]**   11/7
**description [5]**
4/18 5/10 6/1 7/9
11/21
**desires [1]**   5/22
**destroy [3]**   38/6
44/23 58/17
**destroying [1]**
45/15
**destroys [1]**   45/7
**destruction [4]**
34/18 42/4 44/1
58/11
**detail [1]**   25/2
**detained [1]**   62/20
**detention [1]**   21/19
**deter [2]**   49/2
59/13
**determinations [1]**
17/10
**determine [1]**   37/23
**determined [2]**
20/13 60/4
**deterrence [1]**
58/22
**differ [1]**   41/21
**difference [5]**   5/16
5/17 45/4 45/7
52/13
**differences [1]**
43/25
**different [6]**   4/19
23/24 36/19 40/7
48/23 58/3
**differentiate [1]**
10/8
**difficult [2]**   48/8
48/22
**direct [1]**   25/7
**directed [2]**   28/17
44/8
**direction [1]**   40/12
**directly [7]**   6/3
28/25 29/2 30/4
34/16 41/17 58/9
**disagree [1]**   54/4
**disappeared [1]**
44/4
**discovery [1]**   41/1
**discrepancy [2]**
3/25 7/2
**discuss [5]**   8/18
16/5 22/17 49/9
49/10
**discussed [7]**   6/24
7/14 9/1 18/11
18/13 20/4 21/7
**discussion [3]**
10/12 23/18 23/25
**disdain [1]**   53/2

**dismiss [2]**   63/9
63/12
**dismissed [1]**   63/15
**disorder [1]**   50/12
**disorderly [8]**   4/8
5/13 7/10 9/21
15/14 16/1 21/8
59/22
**disparities [2]**
43/15 49/7
**disparity [1]**   57/22
**displays [1]**   33/5
**disputed [1]**   18/15
**disruptive [8]**   4/9
5/13 7/10 9/21
15/14 16/2 21/8
59/23
**distance [3]**   28/16
31/22 43/7
**distinction [1]**
5/17
**distracted [1]**
34/22
**distracts [1]**   33/21
**district [12]**   1/1
1/1 1/10 1/23 12/24
13/2 13/3 13/5 25/9
60/11 60/11 61/11
**disturbance [1]**
8/12
**disturbing [1]**
34/11
**DNA [1]**   61/13
**docket [2]**   22/12
22/16
**document [3]**   11/6
22/12 22/15
**documented [1]**
58/10
**documents [1]**   16/18
**dollars [1]**   51/8
**done [10]**   19/7 38/6
39/14 39/15 39/20
39/21 45/16 49/16
54/2 63/23
**door [6]**   26/12
26/16 26/17 28/14
31/22 59/10
**doors [27]**   28/20
28/21 30/12 30/17
30/20 30/25 31/4
31/13 31/18 31/20
31/20 32/6 32/9
32/13 33/7 33/14
33/19 33/20 33/22
40/15 51/3 53/4
53/13 53/17 58/16
59/5 59/11
**down [4]**   29/17 40/7
45/24 55/1
**downplay [1]**   39/18
**downplays [1]**   45/8
**draft [1]**   17/13
**drastically [2]**
36/18 36/19
**draw [1]**   41/5
**dressed [1]**   47/24
**drew [1]**   34/20
**Drive [1]**   1/17
**driving [1]**   44/17

## D

drove [1]   51/11
drugs [3]   8/6 8/12
57/8
due [1]   62/14
during [3]   4/21
26/24 33/25

## E

e-mail [1]   4/1
earlier [3]   33/3
46/4 59/16
easily [2]   27/8
50/3
echoing [1]   28/4
educational [1]
40/2
Edwards [1]   37/21
eerily [1]   41/19
effect [1]   47/25
efforts [1]   59/6
eight [1]   19/15
either [3]   8/3 9/3
15/10
election [2]   51/7
56/2
elections [2]   56/3
56/6
electronically [1]
18/13
elements [1]   15/24
eligible [1]   21/15
Ellipse [1]   51/13
Elmo [2]   29/13 31/5
eloquently [2]
49/18 52/14
else [4]   16/5 37/11
37/25 42/4
elsewhere [1]   34/18
emboldened [1]
56/13
emotional [1]   8/11
employed [1]   56/23
employee [1]   63/25
encountered [1]
53/6
encouraged [2]
41/16 58/15
encouraging [1]
42/3
enforcement [21]
27/9 38/2 38/11
38/23 38/24 39/3
39/6 39/9 44/4 47/7
48/7 50/7 50/14
51/16 51/25 52/14
53/6 54/23 55/10
56/16 59/2
engage [4]   29/2
33/22 51/16 51/22
engaged [2]   28/25
37/20
engaging [1]   34/16
enormous [1]   39/25
enough [4]   8/17
18/2 39/4 46/3
ensure [2]   7/22
48/19
enter [1]   11/2

entered [5]   26/10
28/15 28/16 34/2
58/9
entering [13]   4/6
4/12 4/24 5/7 7/6
7/24 9/10 9/21
14/18 15/5 34/14
45/19 53/15
enters [1]   63/4
entitled [3]   47/20
47/21 66/5
entry [1]   51/5
equally [1]   10/19
error [2]   7/3 12/6
errors [1]   17/14
essential [1]   15/24
estimation [1]
31/21
et [1]   1/6
evacuation [1]   27/1
even [5]   28/5 31/21
34/15 34/21 47/11
events [2]   49/23
58/10
eventually [2]
50/20 50/21
everybody [4]   5/19
40/21 48/8 54/17
everyone [3]   37/9
51/1 53/9
everything's [1]
5/19
everywhere [1]
31/17
evidence [17]   2/4
2/5 2/6 23/14 24/3
24/13 24/14 29/19
30/10 38/6 41/16
41/17 44/2 44/21
44/23 45/8 45/15
evidentiary [1]
17/18
exact [2]   22/15
37/23
exactly [2]   52/11
53/25
excuse [2]   40/17
57/14
execute [2]   9/12
62/6
execution [2]   13/4
13/6
exercise [3]   35/18
38/18 51/23
exercised [1]   32/7
exercising [1]
33/18
exhibit [37]   2/3
2/4 2/5 2/6 23/19
26/2 26/6 26/13
27/10 27/10 27/14
27/21 27/22 27/25
28/5 28/9 29/2
29/23 29/24 30/14
30/21 30/24 31/6
31/10 31/11 31/16
31/19 32/11 32/12
32/14 32/15 32/16
33/3 33/8 33/12
42/24 43/2

Exhibit 1 [8]   27/10
27/10 27/14 27/21
27/22 27/25 28/5
28/9
Exhibit 2 [1]   26/6
Exhibit 4 [1]   26/13
Exhibit 5 [8]   29/23
32/12 32/15 32/16
33/3 33/8 33/12
43/2
Exhibit 6 [7]   31/6
31/10 31/11 31/16
31/19 32/11 32/14
Exhibit 8A [1]
29/24
Exhibit 8B [2]
30/14 30/21
Exhibit 8C [1]
30/24
exhibit shortly [1]
29/2
exhibits [9]   16/22
17/22 23/9 23/12
23/14 24/10 24/12
24/14 29/14
Exhibits 1 [1]
23/14
Exhibits 5 [1]
29/14
exit [1]   26/18
exited [5]   28/14
28/17 28/20 28/22
41/3
exiting [2]   40/14
41/10
exits [1]   34/5
expect [2]   35/12
35/16
expecting [1]   17/17
experience [1]
61/21
explain [1]   8/3
expressed [2]   35/10
55/10
expresses [1]   35/9
expression [2]   35/5
35/7
extent [2]   25/5
35/15
extinguish [1]   34/9
extinguisher [1]
31/23
extremely [1]   58/22
exultant [1]   54/7
eyes [2]   29/7 30/8

## F

face [10]   24/5 27/7
29/7 32/2 33/16
34/4 34/8 39/1
41/24 55/5
faced [1]   27/5
facilitated [1]
34/17
facility [1]   60/17
facing [1]   6/21
25/9 34/2 52/24
fact [11]   5/21
18/16 19/4 32/9
38/7 41/25 44/12

45/22 46/12 52/16
52/19
factor [3]   32/4
35/2 57/23
factors [16]   21/5
22/18 22/22 40/10
42/5 45/12 45/17
48/17 49/8 49/9
58/3 58/20 58/21
58/21 59/14 59/20
factors that [1]
58/21
facts [4]   19/3
22/24 37/11 37/25
factual [5]   12/2
15/23 17/10 18/17
19/1
failing [1]   62/20
failure [1]   6/20
fair [1]   56/4
Fairfax [1]   1/18
fall [1]   43/15
false [1]   6/22
family [2]   17/1
47/8
family's [1]   55/22
far [3]   28/15 51/13
63/24
fast [1]   32/22
father [1]   57/1
FBI [6]   38/3 38/8
39/14 44/21 45/15
46/11
February [1]   9/19
February 14th [1]
9/19
federal [3]   12/21
13/2 61/16
feel [1]   18/2
feels [3]   36/12
38/16 38/16
feet [2]   31/19
31/20
felony [3]   50/9
52/17 52/21
felt [1]   56/3
few [1]   54/16
FIFIELD [22]   1/13
3/4 3/10 6/7 9/3
9/24 11/20 16/6
17/9 19/17 20/7
20/18 22/8 23/3
23/19 23/23 24/9
26/4 36/5 49/18
59/6 64/17
fight [4]   28/23
51/16 51/22 51/24
fighting [1]   28/22
file [2]   63/3 63/6
filed [3]   17/8 18/4
35/3
filmed [4]   23/24
24/9 27/15 43/8
filming [1]   23/21
final [4]   17/7
17/16 18/23 19/1
finally [2]   30/23
35/2
financial [1]   60/15
find [1]   9/10

**F**

findings [1]   19/4
fine [10]   6/9 13/22
21/21 21/23 22/22
57/20 60/1 60/2
60/5 62/23
finished [1]   31/5
fire [2]   31/23 34/8
firearm [1]   61/14
fired [1]   41/24
firing [2]   41/24
42/3
first [12]   17/6
27/21 27/22 27/23
30/15 32/17 33/14
34/10 37/20 38/1
38/4 51/23
fitting [1]   42/6
five [4]   21/15
21/17 30/11 32/25
flag [1]   30/9
flagpoles [1]   51/19
flipped [1]   34/3
flips [4]   28/11
31/24 32/1 34/7
floor [3]   27/2
28/15 35/20
fog [1]   44/20
folks [2]   27/21
35/11
follow [1]   40/12
following [2]   16/18
61/18
follows [1]   19/8
footage [6]   38/25
49/25 49/25 50/2
51/25 59/11
For the Defendant [1]
1/16
forbearance [1]
50/19
force [2]   35/10
44/17
forced [1]   14/17
foregoing [1]   66/4
forth [4]   12/25
17/10 18/17 31/19
forward [6]   16/10
32/23 40/6 53/3
53/7 60/12
foul [1]   56/9
found [5]   19/9
19/24 25/13 27/4
44/2
foundations [1]
49/20
four [1]   32/23
Fourth [1]   1/14
frame [4]   30/18
30/22 31/1 31/2
frames [1]   24/2
framework [1]   22/7
frankly [2]   50/1
52/4
free [2]   15/6 15/22
friend [7]   32/6
34/6 44/24 44/25
44/25 45/1 63/25
front [8]   11/23

30/5 33/13 33/20
43/13 51/2 56/24
57/5
full [1]   60/15
fully [5]   9/1 9/10
15/19 17/24 44/22
fun [1]   54/18
further [4]   12/23
30/19 35/21 59/25
furthest [1]   31/21
future [4]   40/1
42/22 49/3 59/13

**G**

gain [1]   51/5
gas [1]   51/19
gave [4]   38/9 45/2
54/25 59/16
gear [1]   51/20
general [3]   9/1
25/3 61/17
generalized [1]
49/14
genuine [6]   35/7
35/16 35/20 38/16
38/17 55/18
get-go [1]   46/11
gets [1]   46/4
given [2]   9/9 58/4
giving [4]   7/23
10/15 10/18 20/1
glass [1]   52/10
goals [1]   36/3
God [1]   6/15
going to [1]   57/20
Gonell [1]   50/8
good [5]   3/8 3/23
6/9 17/5 18/22 23/5
23/7 31/9 40/1
48/12 57/2 57/3
63/20 64/6 64/22
government [61]
1/13 2/4 2/5 2/6
3/4 3/11 4/25 5/11
5/24 9/6 11/7 16/7
16/22 17/9 17/15
17/20 17/21 18/4
18/19 19/18 23/9
23/11 23/13 23/17
24/14 24/16 24/19
26/12 26/22 27/9
28/6 29/16 29/18
29/20 30/13 30/23
32/3 34/25 35/6
35/15 35/16 35/17
35/22 35/23 36/1
36/11 37/21 40/6
40/15 40/24 41/18
42/17 42/25 43/4
45/18 45/21 45/22
57/21 63/8 63/10
63/11
Government's [12]
17/12 26/6 26/13
26/21 27/12 30/10
34/11 43/18 46/1
52/18 54/4 57/18
grab [1]   58/11
granted [2]   24/12
63/14

grasping [1]   42/14
great [4]   33/10
47/19 48/12 54/20
greater [2]   36/2
48/20
ground [1]   26/22
grounds [15]   4/7
4/9 4/13 4/25 5/14
7/11 15/15 16/2
20/16 20/23 21/9
28/20 33/25 34/1
59/23
group [4]   51/10
53/13 53/14 59/4
grow [1]   39/21
growing [1]   37/17
grown [2]   37/18
38/19
guideline [4]   19/6
19/8 19/10 21/17
guidelines [19]
14/8 14/10 14/11
19/8 19/10 19/25
20/4 20/14 21/6
21/13 21/22 21/23
22/7 22/15 22/21
24/18 24/20 35/25
48/16
guilty [21]   4/11
4/23 5/3 5/6 5/12
5/22 7/6 8/8 11/3
12/11 14/18 14/23
15/2 15/6 15/7
15/17 15/21 15/23
15/25 16/1 52/15

**H**

Hahahahaha [1]
29/11
hallway [1]   53/6
hand [5]   6/13 9/15
30/18 30/22 30/25
hands [1]   56/14
handwritten [3]
9/14 9/20 11/23
hang [1]   32/7
Hanging [1]   29/10
happened [12]   33/25
37/13 38/20 38/22
40/8 44/16 45/22
54/12 55/13 55/21
56/10 57/25
happening [3]   25/24
29/4 29/5
head [4]   31/3 42/17
43/4 50/12
headphones [1]
36/22
heads [2]   33/18
41/25
hear [10]   3/16
31/17 32/11 32/13
36/21 36/24 37/9
47/1 51/13 52/9
heard [2]   25/6
55/19
hearing [17]   4/4
4/21 5/5 6/1 6/19
7/22 9/9 10/13 11/5
15/11 16/5 17/18

18/25 29/19 36/23
46/17 48/16
heart [1]   36/16
heavy [2]   26/23
26/24
helmets [1]   51/20
help [2]   6/15 58/15
helped [1]   44/23
helps [1]   29/21
here's [2]   43/19
54/11
hereby [1]   59/21
heroes [1]   54/17
hide [1]   39/17
highlighted [1]
35/1
himself [6]   38/17
39/15 40/1 41/18
43/6 43/6
history [9]   19/23
19/25 20/1 20/2
20/3 20/7 42/1 49/5
56/6
hit [1]   50/10
hockey [1]   52/1
Hogan [1]   44/10
hold [1]   46/25
holding [3]   24/5
30/9 33/17
home [2]   21/19
54/13
Honor [85]
HONORABLE [1]   1/10
hoodie [1]   30/2
HOOK [3]   1/22 66/3
66/10
hope [8]   35/8 35/8
45/6 55/18 55/21
55/23 63/18 64/1
horrified [1]   50/6
horrifying [1]
49/23
hours [6]   8/7 24/22
60/9 61/10 61/19
62/3
house [6]   27/7 27/7
53/8 53/8 53/9 53/9
Houston [1]   51/11
hundred [2]   31/20
58/7

**I**

identifiable [1]
27/8
identified [1]
29/16
identify [1]   44/24
illegal [1]   61/15
illness [1]   8/11
illustrate [1]
29/21
image [1]   26/6
images [2]   27/13
30/3
imagine [1]   50/17
immature [2]   47/10
47/12
immaturity [1]
37/15
immense [1]   43/5

**I**

impacts [1]   10/25
impassive [1]   32/2
impeding [1]   19/12
important [5]   46/16
58/22 62/9 62/10
62/12
impose [2]   21/12
48/19
imposed [4]   21/20
48/25 58/7 63/1
imposing [1]   61/24
imprisonment [4]
13/8 20/5 21/11
62/24
in-person [2]   3/6
3/7
inaccuracies [1]
18/23
inadequate [1]
50/16
incarceral [3]
42/16 43/18 43/19
incarceral for [1]
43/19
incarceration [3]
24/21 58/7 58/19
incentivize [1]
45/14
include [3]   20/15
20/22 48/24
included [3]   5/4
26/6 26/12
includes [2]   3/14
26/8
including [6]   14/11
14/20 21/5 27/16
30/15 43/20
incorporate [1]   7/9
incredible [2]
50/19 52/10
incredibly [2]
33/18 34/11
indicated [5]   27/12
30/17 30/21 31/1
33/2
indicates [1]   26/17
indicating [1]   29/7
indictment [6]   4/5
8/22 15/14 63/10
63/12 63/15
indifference [2]
34/12 34/24
individual [4]
39/12 39/12 49/11
49/15
individuals [5]
26/1 26/8 34/15
49/13 58/5
indulgence [1]
27/17
information [1]
38/20
informed [1]   9/11
initial [3]   10/4
37/15 58/9
initialed [2]   9/23
10/1
initially [1]   52/17

initials [3]   10/1
10/6 10/8
innocence [1]   10/14
insanity [1]   25/23
inside [16]   26/20
27/24 28/10 40/14
41/2 42/10 43/5
49/20 50/16 50/21
53/5 53/5 55/9
55/16 59/3 59/10
Instagram [6]   27/10
27/11 27/14 27/23
29/6 29/11
instead [1]   59/9
institutions [1]
56/18
insulting [1]   41/23
intend [2]   17/18
24/16
intended [3]   12/10
32/5 32/7
intending [1]   5/22
intends [2]   17/21
23/11
intense [1]   37/5
intention [2]   7/5
7/12
interaction [2]
23/21 23/21
interactions [2]
9/8 28/8
interest [2]   60/4
60/5
interior [1]   25/18
intermittent [1]
21/20
interview [3]   28/18
38/3 39/14
interviewed [1]
38/8
intimidate [1]   51/4
into [32]   2/4 2/5
2/6 3/19 3/20 7/24
11/2 14/13 14/18
22/20 23/14 24/13
24/14 25/2 28/22
29/19 32/22 32/23
33/10 39/13 41/19
42/6 45/19 48/8
51/5 53/3 56/14
57/23 58/3 58/4
59/3 62/7
introduce [1]   29/20
introduced [2]   30/4
31/7
introducing [1]
29/18
investigation [5]
17/13 17/16 19/23
45/3 62/5
investigators [2]
45/21 45/22
involved [2]   41/12
49/15
involving [1]   19/11
ironic [1]   52/4
irritant [1]   29/8
issue [3]   9/6 25/1
62/20
issues [2]   18/15

18/20

**J**

jacket [1]   17/4
Jackson [1]   58/7
jail [5]   13/15 46/6
46/9 49/13 57/9
January [10]   25/4
25/11 25/11 27/11
38/4 41/7 49/12
49/18 57/24 58/24
January 20th [1]
38/4
JEFF [3]   1/22 66/3
66/10
Jessica [1]   44/9
job [5]   50/8 50/13
57/3 57/3 60/2
jobs [1]   55/14
joined [2]   28/21
53/12
Jones [1]   40/20
judge [4]   1/10
44/10 58/2 58/6
judges [4]   25/9
43/13 55/19 58/5
judgment [3]   32/8
59/20 63/4
Judicial [1]   1/17
Judiciary [1]   56/15
jurisdiction [4]
64/10 64/11 64/13
64/20
jurors [1]   40/18
justifying [1]
42/16

**K**

KATHRYN [2]   1/13
3/4
keep [4]   3/21 28/23
50/20 64/10
key [1]   43/25
kind [5]   8/12 42/18
42/20 45/10 49/24
kinds [1]   47/24
knew [2]   52/25
57/14
knowing [2]   7/25
15/21
known [1]   57/15

**L**

label [1]   29/17
labeled [2]   30/14
30/23
Landon [3]   3/6
21/25 64/8
language [2]   56/17
56/17
LAROCCA [106]
Larocca's [13]   5/2
16/6 27/10 27/23
28/18 31/2 31/11
31/24 33/23 34/24
49/5 51/15 60/17
last [3]   8/7 11/5
11/17
later [2]   29/5
30/15

law [29]   3/24 13/2
27/8 38/2 38/11
38/23 38/24 39/3
39/6 39/9 44/4
45/14 47/7 48/7
49/1 50/6 50/14
51/16 51/25 52/14
53/2 53/6 54/22
55/10 56/14 56/16
57/14 59/2 64/23
law's [1]   46/8
lawfully [2]   51/6
56/2
lawn [1]   25/14
lawyer [7]   6/25
7/15 8/3 8/15 14/20
50/2 57/21
lawyer's [1]   57/17
lays [1]   19/5
Leach [6]   31/6 31/7
31/10 32/15 32/22
33/1
leading [1]   25/25
leaning [1]   37/5
learned [2]   55/21
55/23
learning [1]   37/14
least [2]   21/16
34/24
leave [2]   28/20
40/12
lecturn [1]   3/10
led [1]   39/24
LEE [36]   1/16 1/17
3/5 6/5 8/15 8/18
9/1 9/3 9/23 10/6
10/7 11/20 11/25
12/17 16/8 16/13
18/25 17/25 18/8
18/10 19/19 20/11
21/2 22/10 33/2
36/6 40/22 46/20
48/15 48/19 52/13
54/7 55/6 59/18
60/16 64/13
left [4]   28/18
30/22 36/11 53/12
left-hand [1]   30/22
Legal [1]   1/17
lend [1]   53/4
lent [1]   53/24
less [1]   57/13
lesser [1]   53/22
lesson [2]   55/21
55/23
letter [11]   16/24
35/4 35/6 35/10
36/12 36/15 38/16
38/17 46/3 46/22
47/6
level [5]   19/12
19/14 19/15 19/17
20/3
levels [1]   19/15
life [4]   57/2 57/6
63/21 64/4
lift [1]   50/11
lighter [1]   14/24
like to [1]   29/12
Likewise [1]   4/20

**L**

line [1]   27/5
link [1]   29/25
little [5]   36/13
40/18 40/21 56/25
64/24
live [2]   35/11 64/4
lives [1]   56/8
local [3]   60/19
60/22 61/16
long [5]   30/14
32/16 50/8 63/21
63/21
longer [2]   40/18
64/24
look [6]   9/18 39/11
45/17 51/17 57/25
58/1
looking [11]   9/18
39/5 40/8 43/10
43/14 45/4 45/12
45/13 49/25 57/6
57/7
looks [3]   9/22
31/23 32/8
lose [1]   56/9
losing [1]   56/7
loss [1]   57/1
lost [3]   55/13
55/14 56/10
lot [12]   26/22
39/13 41/18 46/1
50/1 51/17 55/12
55/15 57/1 57/7
63/20 63/25
loud [1]   28/2
loved [1]   63/24
loves [1]   50/13
lower [1]   29/18
luck [2]   64/6 64/22

**M**

M4 [1]   33/17
magnitude [1]   47/13
mail [1]   4/1
maintaining [1]
43/4
major [1]   25/17
makes [1]   63/11
making [3]   6/22
15/19 46/12
man [3]   39/21 48/13
48/13
managed [1]   50/20
mandatory [3]   13/25
14/12 22/3
manual [2]   19/8
19/25
many [6]   35/13 42/8
50/3 54/7 59/7 59/8
map [1]   26/12
marble [1]   28/4
march [1]   47/21
mark [1]   32/19
mask [3]   3/20 33/16
36/8
masks [1]   51/19
materials [1]   5/10
matter [2]   64/23

66/5
mature [1]   39/22
maximum [6]   13/15
13/18 13/22 21/10
21/21 52/22
may [16]   3/13 5/16
6/17 21/11 21/20
34/10 36/7 48/18
50/8 53/18 53/19
56/4 61/1 62/19
62/20 63/5
maybe [1]   55/11
Mazzocco [3]   43/23
44/1 59/16
Mazzocco's [2]   44/2
45/5
mean [5]   37/5 52/13
54/6 60/25 63/18
meaningful [1]   35/5
means [3]   25/20
57/11 57/13
meant [1]   47/6
measure [1]   51/23
media [10]   35/1
36/20 37/9 38/7
44/3 44/11 54/2
54/14 54/21 54/24
medicine [1]   8/7
member [1]   27/1
members [2]   47/9
52/3
memoranda [4]   16/21
26/7 26/21 40/7
memorandum [4]
16/23 26/14 27/12
35/3
mental [1]   8/11
merits [1]   49/15
message [2]   45/11
46/10
messages [7]   36/20
37/9 44/7 44/8
44/13 47/11 56/15
metal [1]   53/16
microphone [4]   3/16
3/20 36/13 36/23
middle [2]   31/2
32/18
midline [1]   35/24
midpoint [2]   24/19
35/24
midst [1]   32/2
might [3]   32/8 45/6
63/19
millions [1]   51/8
mind [2]   25/23
36/16
mine [1]   10/8
minimize [2]   39/18
44/3
minimizes [1]   45/8
minute [3]   32/18
52/16 64/24
minutes [8]   26/19
30/11 32/16 32/18
32/21 32/23 32/25
40/12
misconception [2]
44/14 44/15
misconceptions [1]

44/18
misdemeanor [6]
5/18 14/2 21/10
24/18 52/20 55/3
misdemeanors [1]
52/21
misinformation [3]
37/17 39/23 44/20
misjudging [1]
36/18
misleading [1]   24/4
mistake [5]   21/25
56/22 64/2 64/3
64/5
misunderstanding [1]
39/19
misunderstandings [1]
44/19
mitigating [4]   40/9
41/22 42/16 52/19
mitigation [1]
52/18
mix [1]   51/18
mixed [2]   46/10
54/19
mob [4]   50/24 50/25
51/4 52/2
mode [3]   28/12
31/25 42/25
moment [1]   52/25
moments [1]   34/19
month [1]   44/10
months [8]   20/5
22/22 24/19 24/21
35/23 57/19 59/22
59/25
more [8]   21/12
21/16 38/20 42/6
43/18 48/7 57/7
63/24
most [4]   13/14 33/7
46/16 64/15
mother [1]   17/3
motion [3]   24/12
63/11 63/14
move [4]   16/10
23/14 30/16 63/9
moves [1]   30/16
moving [1]   56/25
Mr. [182]
Mr. Bradley [2]
6/10 40/17
Mr. Bret [1]   3/5
Mr. Bromley [1]
58/18
Mr. Cortez [22]
25/20 25/24 26/7
26/9 26/14 26/19
27/4 27/24 28/9
28/14 28/25 29/6
30/6 30/7 30/11
30/16 30/16 30/24
32/6 33/20 34/20
53/20
Mr. Cortez's [1]
33/8
Mr. Edwards [1]
37/21
Mr. Larocca [99]
Mr. Larocca's [13]

44/18
misdemeanor [6]
5/2 16/6 27/10
27/23 28/18 31/2
31/11 31/24 33/23
34/24 49/5 51/15
60/17
Mr. Leach [6]   31/6
31/7 31/10 32/15
32/22 33/1
Mr. Lee [32]   6/5
8/15 8/18 9/1 9/3
9/23 10/6 11/20
11/25 12/17 16/8
16/13 16/25 17/25
18/8 18/10 19/19
20/11 21/2 22/10
33/2 36/6 40/22
46/20 48/15 48/19
52/13 54/7 55/6
59/18 60/16 64/13
Mr. Mazzocco [2]
44/1 59/16
Mr. Mazzocco's [2]
44/2 45/5
Ms. [25]   3/4 3/6
3/10 6/7 9/3 9/24
11/20 16/6 17/9
19/17 20/7 20/18
21/25 22/8 23/3
23/19 23/23 24/9
26/4 36/5 40/20
49/18 59/6 64/8
64/17
Ms. Ami [1]   3/6
Ms. Fifield [20]
3/10 6/7 9/3 9/24
11/20 16/6 17/9
19/17 20/7 20/18
22/8 23/3 23/19
23/23 24/9 26/4
36/5 49/18 59/6
64/17
Ms. Jones [1]   40/20
Ms. Kathryn [1]   3/4
Ms. Landon [2]
21/25 64/8
much [8]   5/16 18/19
29/4 32/7 32/10
33/10 48/7 50/22
multiple [3]   27/13
27/15 49/25
must [6]   50/18 60/7
61/19 62/2 62/13
63/3
myself [2]   25/6
33/3

**N**

named [1]   63/22
narcotic [1]   8/12
nature [2]   15/20
49/4
near [2]   30/25
31/18
nearby [1]   24/3
nearly [1]   39/4
necessary [2]   36/3
48/20
need [8]   9/17 11/18
16/5 48/24 49/6
49/7 57/22 64/25

**N**

needed [2]   18/23
38/12
negotiate [2]   33/14
34/7
negotiating [1]
33/16
negotiations [2]
37/20 37/23
nevertheless [1]
59/3
news [1]   29/17
next [2]   54/16 56/8
nightmares [1]
50/13
No. [2]   23/20 42/24
No. 5 [1]   23/20
No. 6 [1]   42/24
noise [2]   44/20
52/10
non [1]   43/18
non-incarceral [1]
43/18
None [1]   9/7
nonviolent [1]   13/1
north [13]   26/17
28/14 28/20 28/21
30/12 30/17 30/25
31/4 31/13 33/7
33/14 40/15 53/13
northwest [26]   16/16
notable [2]   27/20
33/7
note [3]   20/8 23/18
25/3
noted [4]   23/8
24/17 33/2 33/9
notes [1]   47/6
notify [2]   22/19
60/14
noting [1]   33/12
notion [1]   56/10
nullify [1]   51/6
number [5]   23/19
23/22 25/7 25/8
55/7
numbers [1]   34/13
NW [2]   1/14 1/24

**O**

oath [5]   6/11 6/18
6/19 6/23 39/2
objection [13]
17/10 18/16 18/25
19/16 19/18 20/6
20/8 23/15 23/16
60/24 61/5 64/16
64/18
objections [2]
17/13 17/15
obligation [1]
60/15
obstructing [1]
19/11
obviously [1]   55/6
occurred [2]   7/3
44/20
odd [2]   42/7 42/7
off [6]   3/20 27/5

28/4 34/3 36/8
36/11
offender [1]   56/20
offense [27]   4/18
5/10 6/2 7/9 11/6
11/9 12/25 13/1
15/24 16/19 16/21
19/2 19/11 19/12
19/14 19/14 19/15
19/16 20/3 21/22
24/18 42/12 48/25
49/5 51/7 60/3
62/23
offer [2]   8/19
11/18
office [10]   12/24
13/5 16/17 22/20
31/8 61/11 61/18
61/22 62/3 62/4
office's [1]   19/6
officer [4]   18/22
33/15 43/3 50/8
officer's [3]   24/5
40/12 58/12
officers [24]   19/12
23/22 27/8 28/5
28/7 28/8 29/1
33/13 33/17 34/3
34/18 41/23 48/7
50/7 50/14 50/14
51/4 53/6 53/14
55/10 58/14 59/1
59/4 59/7
officers' [1]   59/6
official [2]   1/23
66/3
old [2]   50/11 56/21
once [4]   6/18 27/24
53/5 63/23
one [25]   13/15
14/11 20/2 21/16
24/21 27/2 27/15
32/18 34/6 38/25
40/10 42/1 43/22
43/24 43/25 46/15
47/19 51/3 54/2
55/2 55/11 56/4
58/15 58/21 59/8
ones [2]   10/18 15/2
online [2]   56/15
62/1
only [10]   11/17
17/12 36/23 42/9
43/4 55/11 57/25
59/7 59/7 61/20
onset [1]   37/19
open [2]   15/3 29/16
operating [1]   22/7
opportunities [2]
40/2 55/15
opportunity [3]
23/3 46/23 64/4
option [1]   61/5
order [2]   46/8 62/5
ordered [2]   22/5
60/1
orient [1]   24/25
original [3]   7/21
14/9 15/10
originally [1]   9/19

others [9]   34/4
38/6 39/16 39/21
41/24 42/8 43/16
44/8 56/13
otherwise [2]   11/20
30/3
out [8]   19/5 28/24
33/4 37/24 38/20
43/8 46/14 48/18
outmanned [1]   50/6
outnumbered [2]
50/6 59/1
outrageous [1]   53/2
outside [3]   30/12
33/6 55/20
oval [1]   30/1
over [13]   18/7
18/13 38/9 44/5
44/21 54/1 54/11
54/11 54/16 57/16
57/20 57/20 61/1
Overall [1]   48/11
own [7]   15/6 15/22
18/20 28/18 45/9
49/16 56/14
owned [1]   45/1
ownership [2]   38/1
45/16

**P**

p.m [6]   1/7 25/15
26/11 26/18 41/6
65/2
pack [1]   27/5
page [5]   2/3 5/1
11/23 30/1 40/6
paid [1]   60/15
pans [1]   28/10
papers [1]   18/4
paragraph [1]   21/24
paragraphs [1]   12/3
paralegal [1]   31/7
pardon [2]   25/11
30/7
parents [2]   57/8
57/8
pariahs [1]   55/14
parliamentarian [2]
26/12 26/15
part [10]   14/4
23/12 24/16 34/24
42/10 42/12 53/4
58/23 63/2 63/8
participate [3]
51/9 51/14 53/24
participated [3]
25/8 41/17 42/11
participation [1]
61/22
parties [17]   4/1
4/4 5/3 5/11 6/2
9/12 10/10 11/15
12/4 12/10 20/10
20/16 20/23 22/19
22/25 23/2 24/23
parties' [1]   22/4
parts [1]   44/15
past [4]   40/19
40/21 44/18 44/19
path [2]   26/14 40/1

pause [1]   42/23
paused [1]   32/21
pay [6]   13/25 14/5
60/1 60/4 60/6 60/7
payable [1]   60/10
paying [1]   55/6
payments [1]   60/12
peace [1]   48/13
peacefully [1]
51/21
peak [1]   25/21
penal [1]   21/7
penalty [1]   60/5
pending [2]   8/22
62/19
people [34]   25/7
25/8 34/13 34/19
38/22 42/3 43/5
43/13 45/14 46/6
49/20 50/15 50/21
51/3 51/18 51/19
51/20 51/21 52/8
53/5 54/7 54/12
54/21 54/22 55/5
55/9 55/16 55/20
56/3 56/6 57/5 58/2
59/10 61/24
per [1]   28/18
perceptible [1]
33/6
perfect [1]   37/2
perhaps [2]   41/25
45/5
period [1]   21/19
periphery [1]   32/10
perjury [1]   6/22
permission [1]   63/6
person [16]   3/6 3/7
14/21 23/20 23/24
23/24 38/24 38/24
42/17 42/21 56/21
56/24 61/11 63/17
63/20 63/22
perspective [1]
34/11
phase [1]   46/19
phone [5]   18/13
24/5 31/12 38/10
54/25
physical [2]   28/16
34/22
pick [1]   64/3
pieces [1]   40/8
place [6]   6/10
30/25 36/17 37/15
37/17 39/18
places [1]   59/8
Plaintiff [1]   1/4
plans [1]   24/9
play [7]   17/21
23/12 26/3 26/5
32/17 32/17 40/13
played [6]   27/19
31/14 32/20 32/24
41/8 42/25
playing [2]   23/17
29/14
plea [66]   3/25 3/25
4/3 4/3 4/10 4/18
4/21 4/21 4/22 5/2

**P**

plea... [56]   5/4
5/20 5/25 6/18 7/6
7/6 7/8 7/21 7/21
7/24 8/1 8/19 9/11
9/11 9/15 9/19
10/13 10/15 10/19
10/25 11/3 11/5
11/16 11/17 11/19
11/22 11/24 12/3
12/20 13/4 13/6
14/4 14/9 14/18
15/2 15/3 15/5
15/10 15/11 15/21
15/21 15/25 15/25
16/6 16/19 16/20
20/9 22/4 24/23
45/19 46/21 55/3
60/7 62/10 63/3
63/8
plead [10]   4/11
4/23 5/22 9/5 11/3
12/11 15/16 15/17
52/20 52/23
pleaded [1]   5/12
pleading [5]   8/8
14/23 15/23 37/24
52/15
please [3]   6/11
6/12 31/6
pledged [1]   63/9
podium [2]   3/17
3/19
point [9]   17/15
20/1 23/2 23/13
26/18 27/9 29/12
33/4 47/15
points [1]   19/25
pole [1]   50/10
poles [1]   51/19
police [30]   14/21
23/22 26/23 26/24
27/5 27/8 28/2 28/3
28/7 28/17 28/23
29/9 30/12 33/9
33/13 33/15 34/3
34/5 34/6 34/17
34/18 34/23 41/23
48/6 50/14 51/4
53/16 54/25 58/11
58/14
political [4]   47/19
47/20 56/14 62/1
polls [1]   56/8
portion [1]   27/23
portions [1]   23/12
position [1]   31/13
positive [1]   64/1
possess [2]   61/13
61/15
possible [4]   25/22
29/13 34/13 35/15
post [2]   50/12 54/3
post-traumatic [1]
50/12
posted [1]   29/6
posting [1]   54/14
posts [2]   54/21
54/24

power [3]   50/22
51/6 52/4
prefer [3]   3/17 6/3
47/4
preference [1]   6/3
preparation [1]
16/17
prepared [1]   11/7
prescribed [1]   21/6
presence [4]   17/6
26/23 26/25 53/25
present [3]   17/3
24/11 59/9
presentence [19]
16/16 17/7 17/7
17/11 17/13 17/16
18/4 18/7 18/11
18/17 19/1 19/3
19/5 19/23 20/4
20/15 20/22 22/25
62/4
presumption [2]
10/14 49/13
pretrial [3]   40/4
62/8 62/17
prevailed [1]   41/25
prevent [2]   53/7
53/14
previous [1]   9/8
previously [2]   23/8
28/13
principle [1]   52/6
prior [3]   9/11
19/24 25/11
prison [1]   52/22
Prisons [2]   59/22
61/2
private [1]   44/7
privately [1]   37/10
probably [1]   57/11
probation [23]   3/7
5/12 16/17 18/3
18/21 19/5 21/15
21/16 21/23 22/20
22/22 36/1 43/17
57/18 60/20 60/23
61/7 61/11 61/18
61/22 62/3 62/4
62/14
problem [1]   4/15
Procedure [1]   12/22
proceed [1]   46/19
proceeded [1]   26/9
proceeding [2]
15/10 53/7
proceedings [2]
65/2 66/5
process [1]   39/22
productive [1]
57/13
profiles [1]   44/3
program [3]   61/23
61/23 62/1
projectiles [1]
53/15
promised [1]   14/22
promises [1]   15/1
promote [2]   49/1
49/3
promoted [1]   44/11

promoting [1]   44/9
promotion [1]   35/1
property [3]   42/4
51/8 58/18
propose [1]   6/2
propounded [1]   6/14
prosecuted [1]
12/23
prosecutor [2]   9/23
14/21
protect [5]   45/8
46/7 49/2 50/15
50/20
protecting [1]   43/5
protest [3]   47/21
51/18 51/21
protesting [1]
51/12
protocols [2]   3/9
3/9
proud [3]   38/10
38/15 44/6
prove [1]   11/7
proven [2]   35/13
35/19
provide [4]   21/14
49/1 49/7 62/2
provided [3]   18/12
28/6 41/1
provides [2]   19/11
21/11
provision [2]   4/19
7/10
provocateurs [1]
37/16
proximity [3]   23/21
27/1 29/3
PSR [2]   18/24 40/2
public [3]   43/5
29/3 50/3
pull [3]   27/10 31/5
32/15
pulls [1]   31/10
punish [1]   46/2
punishing [1]   53/21
punishment [2]
47/18 49/2
purge [1]   38/7
purpose [2]   19/4
51/12
purposes [2]   48/21
48/24
pursuant [3]   10/15
22/3 62/25
push [1]   53/3
pushed [2]   30/20
31/3
put [8]   17/19 24/7
38/23 39/13 40/6
40/16 42/20 46/9
puts [2]   20/2 41/18
putting [2]   39/15
46/6

**Q**

quickly [1]   18/21
quite [2]   33/18
58/16

**R**

rack [2]   32/12
53/16
raise [1]   6/12
ram [2]   32/13 53/17
range [11]   19/6
20/5 20/14 21/6
21/13 21/17 21/22
21/24 22/21 24/20
35/25
rather [1]   33/22
reach [1]   46/14
reached [1]   20/10
reaction [3]   41/18
42/7 47/11
read [3]   8/25 18/10
46/22
ready [1]   16/10
realize [1]   50/23
really [9]   25/16
25/21 35/4 42/14
43/24 44/13 50/22
51/13 63/18
reason [1]   55/22
reasonable [1]
35/18
reasons [1]   55/2
receive [1]   59/17
received [5]   8/10
8/21 16/15 44/10
55/3
recently [1]   8/11
recitation [1]   19/1
recommendation [4]
16/16 17/8 22/23
35/23
recommendations [1]
60/16
recommended [1]
22/20
record [3]   24/7
40/25 66/5
recorded [2]   31/12
33/3
recovered [1]   31/11
red [9]   29/7 29/7
30/1 30/2 30/9
30/18 30/21 31/1
31/3
referenced [3]
22/12 22/14 22/15
referred [1]   12/6
reflect [2]   42/23
48/25
reflected [1]   52/19
reflection [1]   25/7
reflects [2]   34/12
60/3
regard [4]   13/7
14/8 16/5 20/21
regarding [4]   14/16
19/2 20/17 20/24
regret [2]   35/7
38/16
rehabilitating [1]
57/12
rehabilitation [1]
49/3
relationship [1]

**R**

relationship... [1]
33/24
relative [3]   26/16
29/22 31/13
relax [1]   3/9
release [19]   13/11
13/19 21/12 24/22
43/17 44/11 57/19
60/1 61/10 61/12
62/4 62/8 62/11
62/17 62/18 62/19
62/21 64/13 64/20
released [1]   61/12
relevant [1]   48/17
remain [2]   3/15
62/11
remaining [8]   4/6
4/12 4/24 5/7 9/21
63/9 63/12 63/14
remains [1]   32/9
remember [2]   10/12
25/14
remorse [16]   35/5
35/7 35/16 35/19
36/11 36/11 38/16
46/5 46/17 52/15
55/6 55/9 55/12
55/15 55/19 63/17
remorseful [2]
45/25 46/2
reopen [2]   5/20
5/25
repeating [2]   49/17
51/7
repetitive [1]   25/5
rephrase [1]   20/20
report [22]   16/16
17/7 17/7 17/11
17/13 17/16 18/4
18/8 18/11 18/18
19/1 19/3 19/5
19/23 20/4 20/15
20/22 23/1 61/11
62/5 62/14 62/15
reporter [5]   1/22
1/23 3/16 36/22
66/3
representing [3]
3/4 3/5 3/6
request [2]   60/18
63/6
requesting [2]
24/19 64/12
requests [1]   35/18
require [2]   19/25
60/8
required [3]   21/21
34/16 60/6
requires [1]   21/4
requiring [2]   21/18
33/21
residue [1]   31/22
resources [3]   34/17
45/19 60/2
respect [4]   45/13
49/1 53/11 62/16
respected [1]   46/8
respectful [1]

**25/22**

respectfully [1]
35/17
respects [1]   38/24
responsibility [7]
19/13 37/18 37/22
41/13 45/17 45/20
56/22
restating [1]   35/22
restitution [6]
14/5 22/4 22/23
24/23 49/7 60/6
restraint [1]   33/19
restricted [12]   4/6
4/9 4/13 4/25 5/7
5/14 7/11 9/22
15/15 16/2 21/8
59/23
result [1]   6/21
results [1]   19/15
retardant [2]   31/23
34/9
retire [1]   50/13
retired [1]   50/11
revealed [1]   22/25
reverence [1]   53/10
review [2]   23/10
30/10
reviewed [3]   16/15
23/11 35/6
reviewing [1]   23/17
revisions [1]   18/20
rhetoric [2]   56/14
56/15
rifle [1]   33/17
right [19]   6/5 6/13
10/3 24/3 24/5
29/18 30/18 30/25
36/10 37/12 41/4
41/9 43/3 43/7 48/3
48/14 53/19 59/6
63/1
right-hand [2]
30/18 30/25
rights [7]   7/23
10/13 10/14 10/18
10/25 51/23 63/2
riot [14]   25/3 25/8
25/16 26/24 28/7
34/13 35/1 35/14
41/13 42/19 44/17
47/10 48/4 58/24
rioter [1]   50/10
rioters [12]   25/16
27/5 27/6 28/21
33/14 33/16 34/7
53/7 53/13 53/14
53/15 58/10
rioting [1]   54/13
risk [2]   43/5 56/19
Room [1]   1/24
roommate [1]   25/11
roughly [1]   26/14
routes [1]   27/1
rule [4]   5/25 12/21
16/4 53/2
rumble [1]   51/21
run [1]   40/21

**S**

same [12]   10/1
10/18 11/20 13/7
13/8 13/11 14/9
28/15 30/2 30/25
35/9 35/10
sat [1]   55/1
satisfied [3]   8/14
15/18 17/24
saving [1]   45/18
saw [6]   3/24 25/21
33/24 34/15 43/7
53/1
saying [3]   27/16
29/11 46/2
scaling [1]   52/8
scene [1]   50/2
schooling [1]   57/9
scope [1]   38/20
screamed [1]   33/15
screaming [9]   34/4
34/6 42/9 51/25
53/17 53/18 54/8
59/2 59/4
screams [1]   52/10
screenshot [5]
29/24 30/10 30/13
30/15 30/24
screenshots [3]
29/15 29/15 29/20
seat [1]   48/19
seated [2]   3/15
6/17
second [1]   30/13
seconds [4]   30/14
32/22 32/23 33/1
section [21]   4/7
4/10 4/14 4/17 4/24
5/8 5/15 5/23 7/8
15/16 16/3 19/9
19/10 19/11 21/4
21/9 22/3 36/4
48/18 59/24 62/25
sections [1]   5/21
secure [2]   59/5
59/9
seeing [4]   58/24
58/25 59/1 59/2
seeing what [1]
58/24
seek [1]   38/5
seem [5]   5/16 34/10
46/2 54/9 54/9
seemed [1]   42/9
seeming [1]   41/19
seems [2]   35/20
46/3
selfie [9]   25/24
26/2 26/7 28/12
29/6 29/9 29/11
31/25 42/25
Senate [1]   27/2
send [1]   45/11
sends [1]   46/10
sent [2]   4/1 37/9
sentence [16]   13/14
14/24 24/20 42/16
43/18 44/10 47/17
47/22 48/20 48/24

**49/7 57/22 59/15**
59/17 62/6 63/1
sentenced [5]   39/17
58/2 58/18 59/25
62/23
sentences [8]   22/21
43/16 43/20 49/6
57/16 57/21 58/4
60/25
sentencing [31]   1/9
5/10 6/4 13/7 13/7
16/11 16/16 16/17
16/21 16/23 17/8
18/5 19/4 19/10
20/5 21/5 21/18
22/18 25/9 26/7
26/13 26/21 27/12
29/19 35/3 35/24
45/5 45/5 46/23
48/15 48/21
sentencings [2]
25/4 55/8
separate [1]   62/22
serious [2]   39/4
51/7
seriousness [2]
48/25 60/3
serve [1]   60/19
service [5]   24/22
43/5 60/9 61/19
61/25
services [2]   8/15
17/25
set [4]   12/25 17/10
18/17 48/17
sets [1]   21/21
setting [1]   45/13
seven [1]   32/16
shall [11]   21/16
22/5 60/12 60/14
61/10 61/13 61/13
61/14 61/15 61/16
62/4
share [1]   29/17
shield [1]   50/10
shocked [1]   50/3
shocking [1]   50/4
short [3]   12/5
60/25 64/25
shortly [1]   29/2
shorts [1]   41/10
show [7]   29/14 34/8
44/13 53/22 55/6
62/21 64/4
showed [1]   50/19
showing [3]   29/7
29/15 40/14
shown [2]   29/25
62/16
shows [8]   23/20
26/14 26/15 31/12
31/16 37/11 42/25
47/11
shut [2]   33/22
59/10
side [4]   30/18
30/22 30/25 56/7
Sidorski [1]   58/6
signed [1]   9/16
16/20

**S**

significance [4] 37/13 39/19 39/20 42/15

similar [2] 43/14 59/16

sincere [2] 38/19 46/5

single [4] 49/10 49/22 50/5 51/3

situation [14] 24/11 36/18 36/18 38/13 41/2 41/20 42/2 42/7 42/15 42/18 42/19 42/20 45/15 46/1

six [2] 20/5 24/19

slow [1] 54/16

slurs [1] 39/2

small [2] 31/1 53/25

smart [1] 3/24

smoke [6] 31/17 31/21 31/22 43/8 52/9 59/1

social [11] 35/1 36/20 37/9 38/7 44/3 44/11 54/2 54/14 54/21 54/24 55/14

society [1] 46/7

solemnly [1] 6/13

Solutions [1] 1/17

somebody [3] 45/9 46/10 50/1

someone [3] 42/20 45/7 49/24

son [2] 17/5 63/24

soon [1] 47/13

sorry [8] 22/13 35/12 36/15 39/7 47/10 47/12 48/4 48/9

sort [2] 35/4 60/25

sought [1] 36/3

sound [2] 40/25 52/10

source [1] 29/16

speak [3] 35/9 46/24 47/1

speaking [3] 3/11 3/19 3/20

speaks [1] 55/25

special [4] 14/1 22/2 60/8 60/10

specifically [1] 40/9

specifies [1] 12/22

speech [1] 51/14

splintering [1] 52/11

spoke [2] 23/23 52/13

sprayed [1] 29/8

stacked [1] 57/10

staff [1] 47/8

stairs [2] 26/16 30/5

stamp [1] 41/6

stand [2] 52/6 59/18

standing [3] 30/4 33/13 51/2

stands [1] 35/8

start [6] 12/4 32/18 36/10 38/12 54/21 54/22

started [5] 39/22 39/23 39/24 42/11 43/8

starting [1] 40/6

starts [3] 36/17 45/9 45/9

state [1] 61/16

stated [4] 15/3 19/3 22/6 28/13

statement [8] 6/22 11/6 11/9 12/25 16/19 16/21 37/11 37/25

statements [2] 18/17 48/16

states [12] 1/1 1/3 1/10 3/3 4/11 5/8 13/5 26/10 31/8 53/10 58/6 58/13

statute [4] 12/5 13/23 21/11 21/21

statutes [2] 21/7 21/14

statutory [5] 4/19 5/9 5/21 5/23 22/6

stay [3] 3/13 47/3 50/15

stepfather [1] 17/2

steps [4] 33/20 38/1 39/25 40/4

Stevenson [1] 63/22

sticks [1] 51/20

still [10] 7/6 10/18 10/19 11/2 11/9 17/24 30/24 32/10 45/1 47/25

stock [1] 41/19

stonewall [1] 38/5

stood [1] 34/2

stop [4] 42/18 42/23 51/6 52/3

stopped [2] 32/25 61/24

story [3] 27/11 27/11 27/23

straight [1] 51/14

Street [1] 1/14

stress [1] 50/12

stretched [1] 34/19

strike [1] 48/23

striking [2] 27/25 31/15

struck [3] 49/22 49/24 50/5

subject [1] 63/1

submit [1] 61/13

submits [1] 36/1

submitted [6] 11/15 16/18 18/19 18/24 23/9 43/23

substance [1] 61/15

subtotal [1] 20/1

suffered [1] 56/25

suffering [1] 55/17

sufficient [3] 36/2 36/2 48/20

suggested [2] 5/25 14/22

Suite [1] 1/17

summary [1] 24/25

sunglasses [1] 30/2

supervise [1] 61/22

supervised [11] 13/11 13/18 21/12 24/21 43/17 44/11 57/19 59/25 61/12 64/13 64/20

supervision [1] 61/17

support [4] 43/18 50/16 53/5 53/25

supporters [1] 47/24

supportive [2] 39/5 39/9

supposed [2] 52/6 62/22

sure [11] 3/15 3/15 5/18 5/21 17/5 27/18 37/8 46/4 46/5 46/8 48/6 62/13 62/19

surrender [3] 61/8 62/13 62/19

swear [2] 6/13 6/16

sweeping [1] 49/14

**T**

table [2] 3/13 21/18

talk [4] 8/3 8/17 18/3 43/24

talked [3] 6/24 55/1 57/21

talking [2] 52/14 62/2

TANYA [1] 1/10

task [1] 33/21

tasked [1] 48/21

team [1] 52/2

telling [1] 35/12

term [8] 13/18 21/10 21/12 21/16 58/7 59/22 60/25 64/20

terms [10] 3/25 11/19 13/8 13/8 13/11 14/9 28/16 39/15 49/16 52/23

terrace [4] 25/18 25/25 26/10 26/17

terrible [1] 57/9

terrified [1] 50/18

terrifying [1] 28/8

testify [1] 50/9

testimony [1] 28/6

Texas [6] 18/14 51/11 60/19 61/7 64/13 64/20

thankfully [1] 41/15

therefore [3] 15/25 19/2 60/5

thin [1] 34/19

though [1] 28/5

thought [1] 44/13

threatened [2] 14/17 28/19

threatening [1] 56/17

three [13] 4/5 4/8 4/12 4/16 4/16 5/13 7/7 15/13 16/22 23/9 24/21 35/23 57/18

threw [1] 53/15

throw [1] 53/24

throwing [1] 53/19

thrust [1] 53/16

times [2] 12/10 49/25

timing [1] 25/14

title [3] 5/8 7/7 12/5

today [8] 5/15 15/19 17/1 17/19 23/13 31/8 46/22 48/1

today's [2] 9/9 15/11

told [5] 40/21 46/21 47/15 62/7 62/9

took [5] 25/24 26/15 38/1 54/15 54/19

top [1] 41/6

total [3] 19/15 22/4 54/25

totality [1] 43/10

totally [3] 3/18 3/22 47/17

tour [1] 28/1

towards [2] 39/3 39/25 45/18

track [1] 39/16

traitor [1] 39/1

transcript [4] 1/9 4/25 5/5 66/4

transfer [6] 50/21 51/6 52/4 64/10 64/12 64/19

traumatic [1] 50/12

traveled [1] 25/10

traveling [1] 31/19

treat [1] 46/13

treated [1] 53/10

treatment [1] 8/10

trial [3] 10/14 11/8 64/23

trials [1] 28/7

tried [3] 44/3 51/4 51/5

tries [1] 45/8

triumphant [2] 54/8 54/13

trouble [2] 47/25 54/17

troubling [3] 54/5 54/6 56/12

true [2] 47/6 66/4

truly [4] 6/14 11/9 28/8 45/25

**T**

Trump [1]   47/24
trust [1]   42/21
truth [1]   35/12
truthfully [1]   6/20
try [7]   33/19 37/1
37/1 39/17 39/18
49/14 55/5
trying [10]   28/23
32/8 33/14 50/15
50/15 51/5 53/14
59/5 59/9 59/10
turn [1]   52/12
turned [4]   38/9
43/8 44/5 44/21
Turning [2]   19/22
56/20
two [9]   4/4 4/5
4/16 4/20 19/15
25/12 32/18 32/21
59/22
type [3]   8/11 12/21
57/16
types [1]   49/6
typical [1]   56/24
typographical [2]
17/14 18/20

**U**

U.S [6]   1/23 7/7
12/24 19/10 60/11
61/18
U.S.C [15]   4/7 4/10
4/13 4/17 4/20 4/24
5/14 15/16 16/3
19/9 21/9 22/3
48/18 59/24 62/25
uh [1]   54/16
uh-oh [1]   54/16
ultimately [3]
25/18 45/24 46/15
unable [1]   63/5
unchanged [1]   11/22
under [7]   6/10 6/18
6/19 6/23 21/13
22/7 45/12
understands [2]
15/20 38/22
undertaken [1]   40/3
Unfortunately [1]
35/13
unguarded [1]   58/16
unique [1]   57/24
UNITED [11]   1/1 1/3
1/10 3/3 5/8 13/4
26/10 31/7 53/10
58/6 58/13
unless [4]   46/6
46/7 46/7 46/18
unlike [1]   39/16
unprecedented [1]
49/21
unwarranted [3]
43/15 49/6 57/22
up [30]   3/10 3/16
3/17 3/18 3/22 7/23
10/15 10/18 21/15
21/21 27/10 31/5
31/10 32/15 40/16

41/24 41/24 42/3
43/1 43/8 45/1 45/9
47/3 51/19 52/25
54/19 57/17 62/21
62/24 64/3
upper [4]   25/17
25/25 26/9 26/17
USA [5]   27/7 27/7
52/1 52/5 53/8
USAO [1]   1/14
USAO-DC [1]   1/14
USB [1]   38/9
use [1]   61/14
used [1]   32/12
user [1]   27/14
using [1]   19/7
utter [1]   41/20

**V**

VA [1]   1/18
valiantly [1]   53/14
value [1]   55/5
variance [2]   20/17
20/24
variances [2]   20/15
20/22
variety [1]   21/5
verification [1]
62/3
versus [2]   43/14
45/9
video [33]   16/22
17/21 23/9 23/12
23/19 23/24 24/1
24/2 24/4 24/10
24/12 27/13 27/19
29/1 29/16 29/17
29/19 29/20 29/25
31/8 31/11 31/14
32/5 32/20 32/22
32/23 32/24 33/1
33/3 40/13 41/1
41/8 46/3
videos [8]   23/11
24/2 26/5 30/3 38/9
39/17 45/2 51/17
videotapes [1]
49/21
view [3]   43/2 49/11
49/15
violate [1]   62/18
violation [14]   4/7
4/10 4/13 4/17 5/7
5/14 7/7 13/2 15/15
16/3 19/9 21/9
59/24 62/22
violence [11]   34/16
34/17 34/22 41/16
41/17 42/4 44/12
48/13 53/1 53/24
59/1
violent [4]   52/12
56/16 56/16 58/23
visible [2]   27/11
30/24
voices [1]   28/3
volumes [1]   55/25
voluntarily [3]
15/6 38/3 62/13
voluntariness [1]

14/17
voluntary [2]   7/24
15/22
votes [1]   56/5
vulnerable [1]
56/18

**W**

waive [1]   60/5
waived [1]   63/2
walked [3]   11/6
43/9 52/25
walking [1]   53/2
wall [1]   26/8
walls [4]   25/24
26/1 27/22 52/9
wants [2]   5/22
46/16
warrant [1]   62/19
warranted [1]   43/14
Washington [5]   1/5
1/15 1/25 25/10
51/11
watch [2]   49/21
50/5
watched [2]   16/23
58/14
watching [1]   49/24
wave [1]   58/9
way [4]   14/18 33/23
36/23 42/22
weapon [1]   61/14
wearing [4]   30/1
30/3 30/8 31/3
weight [1]   39/13
weren't [3]   34/14
50/7 56/5
west [6]   25/13
25/14 25/18 25/25
26/10 26/17
what's [8]   27/20
27/25 36/12 36/12
36/15 36/16 36/16
54/10
whereas [1]   30/18
who's [1]   53/20
whole [7]   25/2
32/17 39/12 39/12
51/17 55/12 55/15
whose [2]   27/6 53/8
willing [1]   51/9
wiping [1]   30/8
wise [1]   63/22
wish [2]   3/24 64/5
wished [1]   46/24
wishes [1]   64/10
within [7]   12/3
13/3 22/12 31/19
60/13 61/10 63/4
without [6]   5/17
5/17 36/18 36/19
50/25 63/6
witnesses [2]   17/18
17/21
wondering [1]   55/25
word [2]   25/23
63/16
words [1]   47/25
work [1]   18/22
works [1]   56/9

world [2]   35/11
36/19
worried [2]   36/22
54/9
worry [2]   56/12
56/13
worst [2]   41/14
63/23
worth [2]   33/12
51/8
write [1]   46/3
writes [1]   54/1
written [3]   8/22
38/18 62/2
wrong [1]   34/14
wrongdoing [1]
45/21
wrote [2]   10/7 54/3

**Y**

year [10]   4/22
13/15 13/19 21/10
21/12 21/13 21/16
24/21 57/17 59/25
years [7]   21/15
21/17 50/3 50/11
52/22 56/21 62/24
yell [3]   42/9 47/21
47/22
yelling [2]   39/1
42/8
yesterday [1]   3/25
young [3]   39/21
56/21 63/20
YouTube [1]   29/25

**Z**

zenith [1]   25/16
zero [5]   19/24 20/1
20/5 24/19 32/19
zone [1]   21/18